No. 22,063.

THE STATE BANK OF KINGMAN, KANSAS, *Appellant and Appellee*, v. R. A. SHEPHERD, *Appellee and Appellant.*

SYLLABUS BY THE COURT

1. EXEMPTIONS—*Butcher's Implements—Unexecuted Intention to Become a Butcher—Right to Claim Exemption.* Where a person is engaged in an occupation which entitles him to hold certain tools and implements exempt from legal process, he cannot, by a mere unexecuted intention to change his calling, unaccompanied by any overt act, acquire the right to claim exemption with respect to the equipment to be used in such contemplated occupation. The special findings in the present case are held to be consistent with a general verdict of nonexemption.

2. CHATTEL MORTGAGE — *Exempt Personal Property — Purchase Price.* Where a person has by a single contract arranged to purchase several articles, making payment partly in property and partly in cash, and obtains the money necessary to enable him to carry out the contract by giving a mortgage upon all the property purchased, under the representation that it is to be used in making payment therefor, the purchase-money character of the mortgage as to a part of the property cannot be defeated by a showing that the buyer and seller had an understanding between themselves that the cash payment was to apply solely to another part.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed July 5, 1919. Affirmed.

*S. S. Alexander*, of Kingman, for the appellant.

*Charles C. Calkin*, of Kingman, for the appellee.

The opinion of the court was delivered by

MASON, J.: The State Bank of Kingman brought an action against R. A. Shepherd for the recovery of personal property under a chattel mortgage. Judgment was rendered in its favor, and the defendant appeals. The plaintiff also took an independent appeal, but most, if not all, of the assignments of error argued in its brief relate to trial rulings, and it filed no motion for a new trial; if examination of any of these assignments would otherwise be required, it is rendered unnecessary by the view taken of the questions raised by the defendant; therefore, this feature of the case may be disregarded.

The enforcement of the mortgage was resisted on the ground that it was void because it lacked the signature of Shepherd's

wife, and that the property in controversy—the tools and implements of a butcher — was exempt. (Gen. Stat. 1915, § 6506.) The bank contended that the claim of exemption was unfounded because at the time the mortgage was given Shepherd was a farmer, and not a butcher, and also that the lien attached regardless of the question of exemption, because it was for a part of the purchase price. A general verdict was returned in favor of the plaintiff, and the sole ground on which the defendant asks a reversal is that several special findings are inconsistent with it.

The evidence tended to show these facts: Shepherd owned a farm near Kingman which he wished to exchange for a butcher's shop and equipment in town. He negotiated a deal to that end, which involved his paying the owner about $1,500 in cash. He arranged with the bank to lend him this amount to enable him to make the payment, upon his agreement to secure the loan by a mortgage on the property he was to acquire. This arrangement was carried out. The mortgage which was given covered the tools and equipment in the butcher's shop, some meat on hand, and a quantity of merchandise—canned and bottled goods—and secured the defendant's entire indebtedness to the bank, including a prior loan of some $3,500, on which it held other security as well. Later a renewal mortgage was given, and still later the defendant became bankrupt. The bank then brought the present action of replevin, seeking to recover the tools and implements, the meat on hand, and the stock of merchandise. The trustee in bankruptcy was held to be entitled to the merchandise other than the meat, and that decision is not contested. The plaintiff consented to a judgment against it on account of the meat, so that the only property here involved is the outfit of tools and implements.

The verdict may have been founded upon either or both of the two theories presented by the plaintiff—that the property was not exempt, or that the mortgage was given for purchase money. The judgment must be affirmed unless each theory is rendered untenable by special findings inconsistent therewith.

1. Under our statute a debtor who is engaged in several occupations can claim exemption with respect to the tools and instruments used in but one of them, and that must be his

main or principal pursuit or business. (*Jenkins v. McNall,* 27 Kan. 532.) The following are the special findings relating to the question whether at the time the chattel mortgage was given the principal business of the defendant was running the butcher shop:

"Did the defendant, R. A. Shepherd, hold a public sale on his farm on or about December 18, 1917, and 41 days after the note dated November 7, 1916, and the chattel mortgage dated November 7, 1917, was given? A. Yes.

"Did R. A. Shepherd continue to run and manage his farm till the day of the sale? A. Yes.

. . . . . . . . . . . . . .

"Did the defendant, R. A. Shepherd, up until the time of his farm sale in December, continue to spend his nights on said farm and look after same? A. Yes.

"Were the tools and implements involved herein used and kept in stock by the said R. A. Shepherd, defendant, on the dates of the mortgages, to wit: November 7, 1916, and May 17, 1917, for the purpose of carrying on the trade or the business of a butcher? A. Yes.

"On what date did the defendant Shepherd take charge of the butcher business formerly operated by Clyde M. Bay and proceed to operate same? A. Sometime between the first and fifth of Nov., 1916."

These findings must be given any construction to which they are fairly open that will harmonize them with the general verdict. The defendant testified that after the trade for the butcher's shop had been agreed to, and prior to December 18, while he was still staying on the farm at night, he moved back and forth every day, and his son was staying in town and taking care of the shop. The findings that the defendant took charge of the butcher business between the first and fifth of November, and that on the seventh he was using the tools and implements for the purpose of carrying it on, are readily to be interpreted as meaning that he was at the time referred to operating it through his son, and not in person. All the findings therefore are consistent with the theory that while the defendant formed the plan of becoming a butcher as early as November 1, he did not carry it into effect until some five or six weeks after the mortgage had been given, and that in the meantime he continued to be a farmer; or that, even if he might be said to be engaged in the business of a butcher during that period, farming continued to be his principal occupation. A considerable number of farming implements were included in the trade for the butcher shop, but no finding was made that

these were all the defendant had, and he testified that he had a few others.    If after the trade had been made and before the ·public sale at the farm· had taken place a controversy had arisen in which the defendant claimed that the farming tools which he still owned were exempt, we discover nothing in the findings quoted that would necessarily be fatal to the contention he would then be making that he was still deriving his principal support from farming.    The court gave an instruction reading:

"You are instructed that personal property cannot be impressed with the claim of an exemption by a mere mental process on the part of the owner, unaccompanied by any overt act, whatsoever; and that the mere intention of the defendant Shepherd, at any future time, however short, to change his occupation from that of a farmer to that of a butcher, if this was done, and take possession of the butcher business, and run it as his main and principal business, would not alone impress the articles of personal property in controversy, with a valid claim for exemption."

The defendant treats this instruction as erroneous, but does not ask a new trial on account of it, maintaining that if this court will now apply what he regards as the correct rule on the subject to the situation presented by the special findings quoted, the result will be a judgment in his favor.    The trial court did not say that the property could not have been rendered exempt without an actual and physical change of occupation by the defendant, but merely that a naked intention to make such change in the future could not in and of itself accomplish that result.    In this we perceive no error.    (*Bush v. Adams*, 72 Kan. 556, 84 Pac. 122.)    Although in some circumstances property may be rendered exempt by the purpose for which it has been acquired, so long as a person is in such a position that he may assert an exemption with respect to a calling which he has followed in the past and in which he still continues, we do not think an unexecuted intention formed in his mind to adopt another calling can alone have that effect.    If the facts established by the special findings had been agreed to in advance, we think the question whether the butcher's tools were exempt would still have been a proper one for submission to the jury.

The defendant places much reliance upon a case holding the immediate physical occupancy of land acquired for a home-

stead not to be necessary to its exemption. (*Randolph v. Wilhite*, 78 Kan. 355, 96 Pac. 492.) There, however, all questions of fact not specifically found to the contrary were by the general decision resolved in favor of the exemption, necessarily implying that the tract originally occupied had ceased to be a homestead at the time the new tract was purchased. Here the implication from the general verdict is that the defendant continued to make farming his principal calling after he had executed the mortgage. In that case the court concluded that there was a virtual, although not a physical, occupancy; in this the jury must be regarded as having believed that no change such as would render the butcher's tools exempt had been effected, although a purpose to make one in the future had been formed.

2. The contract under which Shepherd acquired the butcher shop was in writing. On its face it called for the exchange of the farm for the butcher business, including the stock on hand, tools and fixtures, and a feed lot; but the evidence showed, and the jury found, that the agreement as between the parties to it included an additional stipulation, which was omitted from the writing by mutual mistake, to the effect that Shepherd should pay in cash the value of the stock of merchandise according to an invoice to be made. If the bank furnished Shepherd for that purpose the money with which he bought the butcher's tools, taking a mortgage upon them as its security, the mortgage was one for purchase money (*Foster v. Bank*, 71 Kan. 158, 80 Pac. 49; *Mortgage Co. v. Winters*, 94 Kan. 615, 146 Pac. 1012; 13 R. C. L. 604, 605) and was valid without the signature of his wife. (*Boggs v. Kelly*, 76 Kan. 9, 90 Pac. 765; *Beach v. Fireovid*, 84 Kan. 357, 114 Pac. 206.) The defendant does not dispute this, but asserts that, inasmuch as the only cash payment made in the deal by which he acquired the tools was measured by the invoice value of the merchandise which he obtained at the same time, the money borrowed from the bank was used for the purchase of the stock kept for sale, and not for the purchase of the implements. To this the plaintiff responds that it furnished the money upon the defendant's representation that he was to use it for the purchase of the tools, as well as the other property, and inasmuch as it was used to make the cash payment required to enable the plaintiff to make the deal at all, the

mortgage securing it must be regarded as a lien for the purchase price, in spite of the fact that the buyer and seller had an understanding between themselves that the amount of the cash payment was to be determined by the invoice value of the merchandise that was included in the deal. There was sufficient evidence to support the plaintiff's view of the facts in this regard. One of its officers testified that the defendant told him that he had a chance to buy the butcher shop, but that it would take $2,000 to $2,500 to swing the deal, and asked if he could borrow that amount of the bank; that he was told the bank could not lend him that much; that later he reported that he could probably swing the deal if he could get $1,500, and was going to try; that the bank agreed to furnish this, taking a mortgage on the entire meat market; and that this arrangement was carried out. The language was not as explicit as could be framed, but it was sufficient to present a fair question for the jury whether the person conducting the negotiations on the part of the bank understood, and the defendant intended that he should understand, that the money was to be used in paying for the butcher's implements, as well as for the merchandise.

The jury found that the tools and merchandise were sold to the defendant in one contract, and that the mortgage was given to secure the money to pay the cash due under it; that the understanding of the parties to the trade was that the defendant should pay for the stock of goods at its invoice price; and that he paid no other money except the sum so ascertained. The jury also stated that the money borrowed from the bank was not used for the purchase of the tools and implements, but this really adds nothing to the other findings, being a mere interpretation of the specific facts already found.

The question presented is therefore this: Where a person has, by a single contract, arranged to purchase several articles, making payment partly in property and partly in cash, and obtains the money necessary to enable him to carry out the contract by giving a mortgage upon all the property purchased, under the representation that it is being used in the purchase thereof, can the purchase-money character of the mortgage as to one part of the property be defeated by a showing that the buyer and seller had an understanding between themselves

that the cash payment was to apply solely to another part? Upon this phase of the matter the court gave an instruction reading:

"If the jury find, and believe, from the evidence in the case, that the money loaned by the plaintiff to the defendant Shepherd, or any part thereof, was so loaned by the plaintiff bank with the understanding and agreement between the said bank and the said Shepherd that it was being loaned by said Bank and borrowed by the said Shepherd for the purpose of purchasing the property in controversy, which might otherwise be claimed to be exempt by the said defendant Shepherd, then I say to you that the jury would be warranted in finding that said mortgage, or mortgages, were purchase-money mortgages, and that the same would constitute a lien upon such property, and that the special interest of the plaintiff bank, in and to such articles of personal property, would be measured by the amount of money which was advanced by the plaintiff bank to the defendant Shepherd for the purchase of the property in controversy, and this would be true, even although you further find that all of the money so advanced, was not used by the defendant Shepherd in paying for such property."

In a sense, the borrowed money was not used to pay for the tools, if the buyer and seller understood between themselves that it was applied specifically to the purchase of the merchandise. It might be justifiable, however, to say that the money became a part of the purchase price of all the property if its payment was necessary (as appears to have been the case) to enable the deal to go through at all. But this is a mere matter of the form of expression. We agree with the trial court, that if the money was furnished upon the representation that it was to be used in paying for all the property, on which the bank was to have a mortgage, and it was paid to the seller as a necessary part of the performance of the contract, it is not prevented from being treated as a part of the purchase price by the fact that its amount was determined by the invoice of the merchandise, and that the buyer and seller regarded it as applied to the payment therefor. This view of the law warrants a verdict for the plaintiff, notwithstanding the special findings, and the jury must be deemed to have placed such an interpretation on the evidence as to make the principle applicable and bring about that result. Doubtless, the fact that a borrower obtained a loan on the representation that he was to use the money in making part payment on property he was buying, where he did not actually so use it, would not characterize the resulting debt as one incurred for purchase money;

Bank v. Shepherd.

but where the money is borrowed on that representation and is used in making the cash payment on a single trading contract, by which the borrower acquires the stock in trade and equipment of a business, the privileged character of the debt as one incurred for the purchase price ought not to be restricted by a private understanding, to which the lender was not a party, that the money payment should be considered as applying to a particular portion of it.

Before the giving of the renewal mortgage, on which the action was based, the total indebtedness covered thereby had been reduced, but this was apparently brought about by the bank's realizing on security which had been given it for the older debt before the $1,500 here involved had been furnished. At all events, the payments were not shown to have been made in any other manner, so that the situation is not affected by them. The defendant invokes the authority of a case declaring that a mortgage executed by a husband alone on the homestead of himself and wife, a part of the debt secured having been incurred for the purchase price and the rest for something else, is enforceable only with respect to the former portion. (*Pratt v. Topeka Bank,* 12 Kan. 570.) Of course, the mortgage could create a lien on the tools, if they were exempt, only to the extent of the $1,500 loaned at the time of their purchase. The principle of the case cited has no further application here, by reason of the use of the money by the defendant to enable him to make the deal as a whole, and the lack of any apportionment (so far as concerns the relations of the borrower and lender) of the fifteen hundred dollars between the different items of the property acquired—conditions which the general verdict must be deemed to have established. In this situation the whole of the sum borrowed became a lien upon all of the property. See, as perhaps having some bearing on the matter, Note, 86 Am. St. Rep. 177; *Trammell v. Rosen* (Tex.), 163 S. W. 145.

The judgment is affirmed.