205 F.Supp. 336 (1962)
In the Matter of Mahlon Vearl RADE, Bankrupt.
Mahlon Vearl RADE, Bankrupt, Petitioner,
v.
DENVER PUBLIC SCHOOLS CREDIT UNION and Dolores B. Kopel, Trustee in Bankruptcy, Respondents.
No. 29620.
United States District Court D. Colorado.
April 24, 1962.
*337 Franklin C. Douglas, Attorney at Law, Denver, Colo., for petitioner.
Henry & Adams, Attorneys at Law, Jack O. Jevons, Denver, Colo., and Dolores B. Kopel, Attorney at Law, Denver, Colo., for respondents.
ARRAJ, Chief Judge.
This is a petition for review of an Order of the Referee in Bankruptcy Ordering the trustee to pay over to the Denver Public Schools Credit Union $300.00 of the proceeds of the sale by the trustee of an automobile upon which such said credit union held an unrecorded chattel mortgage given by the bankrupt prior to bankruptcy.
The referee did not make specific findings of fact but it appears that the facts are not in dispute and are substantially as follows:
Bankrupt was indebted to the claimant credit union in the approximate amount of $2,000.00 in mid-June 1961. At that time he wished to buy a 1955 Ford automobile and asked claimant about obtaining a loan for that purpose. After he signed a chattel mortgage in blank, arrangements were made whereby he was to sell his old car and then return to the credit union to obtain enough money to complete the purchase of the '55 Ford. Bankrupt sold the old car and claimant loaned him approximately $300.00 to pay off the purchase price on the 1955 Ford; he executed a new note in the amount of $2,310.27 and a chattel mortgage on the newly acquired car was given to claimant as security for the note. This mortgage was not recorded on the certificate of title to the automobile.
When the petition in bankruptcy was filed, petitioner claimed an exemption in the amount of $300.00 pursuant to CRS 77-13-2(1) (k) which provides for such exemption where the debtor uses such a vehicle for carrying on any gainful occupation. The automobile was sold by the trustee upon Order of the referee and the trustee now holds all the proceeds of such sale.
On November 14, 1961, the referee made the following Order:
"(1) that the lien asserted by the respondent is void as to the Trustee; (2) that the automobile involved is, to the extent of $300.00, exempt property; (3) that the bankrupt forthwith deliver said automobile to the Trustee, to be sold and the proceeds become a part of the general assets of the estate, less the sum of $300.00; (4) said sum of $300.00 shall be paid out by the Trustee by check of the estate payable to the bankrupt and said Credit Union; and (5) that the claim filed herein by said Credit Union (No. 2) be allowed, as unsecured, in the amount due thereon less any credit resulting from the application of all or any part of said $300.00."
Bankrupt filed a motion to reconsider and on December 12, 1961, the referee entered the following Order:
"(1) that said motion be and it is denied and, except as herein ordered to be modified, said order of November 22, 1961, remain in full force and effect; (2) that the Trustee forthwith pay over $300.00 to said Credit Union, being the amount of the bankrupt's exemption in the automobile involved, and to which said Credit Union, as mortgagee of said automobile, is entitled; and (3) that such payment by the Trustee shall be in full satisfaction of any demand the said Credit Union can make or assert against the Trustee arising out of the sale by her of said automobile and the exemption thereon aforesaid."
*338 The Referee in Bankruptcy has certified the following question:
"Did the Referee err, upon the evidence heard by him, in ordering the Trustee to pay over to Denver Public Schools Credit Union $300.00 of the proceeds of the sale by the Trustee of an automobile upon which said Credit Union held an unrecorded chattel mortgage given it prior to bankruptcy by the bankrupt?"
The first matter which this Court must determine is whether it should adjudicate the claims asserted in the proceeds from the sale of the exempt property or direct the creditor to seek an adjudication in the State Courts of rights to the fund. It appears that the Colorado State Supreme Court has never passed on the question in issue. Both the bankrupt and claimant have asked this Court to determine the matter. Because of the relatively small amount involved here ($300.00) and the desirability of having the Bankruptcy Court administer the entirety of the bankrupt's assets, including the proceeds realized from the sale of the exempt property, this Court will endeavor to determine what the applicable substantive law of the state would be. See 1 Collier on Bankruptcy Section 6.20.
The respondent credit union contends that CRS 77-13-3 refers only to attachment and execution wherein a purchase money situation is required to defeat an exemption. From this point it is reasoned that an exemption cannot be claimed in mortgaged property whether a purchase money mortgage was involved or not. In support of this position, counsel for the claimant union seems to interpret Weil v. Nevitt, 18 Colo. 10, 31 P. 487 (1892), as indicating that a borrower loses his claim to exemption whenever he executes a chattel mortgage covering exempt property even though the encumbrance was not executed in a true purchase money transaction.
Next, the credit union cites Charnesky v. Urban, 245 Wis. 268, 14 N.W.2d 161 (1944), and Gylling v. Kjergaard, 8 Cir., 1923, 293 F. 676, for the proposition that a mortgagee may recover from the proceeds of mortgaged property claimed by a bankrupt as exempt when the trustee has sold such property.
In Charnesky v. Urban the plaintiff took the bankrupt defendant's promissory note which was secured by an unrecorded chattel mortgage on an automobile which was purchased from the plaintiff. After the defendants were adjudicated bankrupt, they claimed their statutory $400.00 exemption. Eventually, however, the bankrupt purchased the car from the trustee for $900.00, in effect paying the trustee $500.00. Suit was brought in the state courts after discharge for the amount of the allowed exemption, or, in the alternative, for a foreclosure of the plaintiff's mortgage. The Wisconsin Supreme Court declared that the sale of the automobile was free and clear of any encumbrance. However, it was held that both the exemption and the lien were transferred to the proceeds in the hands of the trustee. Since the lien of the mortgagee was still valid as between him and the bankrupt with regard to the exempt property, the mortgagee was permitted to recover the amount of the exemption.
A mortgage on exempt chattels which was not involved in a purchase money situation was upheld in Gylling v. Kjergaard. There, the mortgaged property was sold and the proceeds had been turned over to the mortgagees by Order of the District Court. On appeal to the Circuit Court, it was held that under the circumstances the mortgage estopped the bankrupt mortgagor from maintaining a claim on the exempt property as against the mortgagee. The Court also noted that the mortgage expressly permitted the mortgagees to take immediate possession of the mortgaged property when they chose to do so, and it felt that such authority extended with equal force to the proceeds from the sale of that property.
As CRS 77-13-3 indicates, exempt personal property is subject to levy *339 of attachment for the purchase price thereof; Behymer v. Cook, 5 Colo. 395 (1880). But it has been held that such a statutory provision in itself did not create a lien in exempt property; Johanson v. Rowland, 196 Iowa 724, 195 N.W. 358 (1923). Weil v. Nevitt, supra, controls insofar as the assignment of the purchase money note by the vendor is concerned. Some jurisdictions follow this Colorado view which forbids the assignee from recovering the purchase price of exempt property; Johanson v. Rowland, supra. And it has been held that a lender of the purchase price acquired no rights under a statute similar to CRS 77-13-3; In re Bailes, D.C.S.C., 1909, 176 F. 460. Other states take a contrary approach in allowing the assignee to assume all the rights of the vendor-assignor; Langevin v. Bloom, 69 Minn. 22, 71 N.W. 697 (1897). See 22 Am.Jur. Exemptions, Section 109. And Iowa has refused to follow the Weil v. Nevitt-Johanson v. Rowland approach where a purchase money mortgage was assigned; Simpson v. McConnell, 228 Iowa 412, 291 N.W. 862, 863 (1940).
However, a distinction has been made between assignments of purchase money obligations and loans made for the purpose of purchasing property which is later claimed as exempt; 22 Am.Jur. Exemptions, Section 109. Where money has been loaned to purchase property which is later claimed as exempt, and a mortgage is given thereon to secure the lender, such a loan and mortgage has been deemed a purchase money transaction. State Bank of Kingman v. Shepherd, 105 Kan. 206, 182 P. 653 (1919); Santanta State Bank v. McNabney, 109 Kan. 69, 197 P. 879 (1921). But the difficulty with a strict application of the doctrine announced in these cases to the one at hand is that only part of the actual purchase price consisted of money advanced by the credit union for that purpose; part of the purchase price consisted of the proceeds from the sale of the bankrupt's old car. Thus, it is relevant to determine whether an ordinary chattel mortgage given on property which is later claimed as exempt will prevail over the exemption.
It is generally held that in the absence of a contrary statutory provision exempt property may be mortgaged. 22 Am.Jur. Exemptions, Section 12; 35 C.J. S. Exemptions § 96. See also Hellerstein, Chattel Mortgages in Colorado (5th ed., 1956) Sec. 87, p. 105. It seems apparent that the execution of a mortgage under this view constitutes a waiver of the bankrupt's exemption, even though nothing in the instrument, just as in this case, so provides. Waivers, of course, tend to undermine exemption objectives; Bankruptcy Exemptions: Critique and Suggestions, 68 Yale L. J. 1459, 1494 (1959). Colorado has held that a stipulation in a cognovit note which waived the right of exemption was invalid as against public policy; Weaver v. Lynch, 79 Colo. 537, 246 P. 789, 47 A.L.R. 299 (1926). However, where a mortgage is executed on exempt property, the prevailing view seems to consider the exemption waived by implication. 22 Am.Jur. Exemptions, Section 132; 35 C. J.S. Exemptions § 106. While there seem to be no Colorado cases that stand for this proposition, the Colorado statutes do not void a mortgage on exempt property. It would seem then, that the courts of Colorado would follow this general approach and permit a valid mortgage to be executed on property that may later be claimed as exempt. Where the bankrupt has intended to create a security interest in the property which he later seeks to claim as exempt, such a ruling would not be contrary to the liberal construction which must be given exemption laws as announced in Haas v. DeLaney, D.C.Colo.1958, 165 F.Supp. 488.
The next question is whether or not the mortgage lien may be transferred to the proceeds from the sale of the mortgaged property. (It has been held that a statutory provision such as CRS 77-13-3 did not, in itself, create a lien in exempt property; Johanson v. Rowland, 196 Iowa 724, 195 N.W. 358 (1923)). In Charnesky v. Urban, supra, it was *340 held that since, by lawful process, cash was substituted for exempt property, equity would apply the mortgagee's lien to the fund. Cf. 119 A.L.R. 467. Although Colorado courts apparently have had no occasion to make such a decision, it has been indicated that a favorable attitude towards equitable liens prevails in Colorado. In Mitchell v. Bowman, 10 Cir., 1941, 123 F.2d 445, it was held that an equitable lien was created in a fund where a contract contained a promise to pay for services rendered out of the fund. See also School Dist. No. 3 v. Central Savings Bank & Trust Co., 113 Colo. 487, 159 P.2d 361 (1945). And in American Investors Life Ins. Co. v. Green Shield Plan, Colo., 358 P.2d 473 (1961), the Colorado Supreme Court declared that equitable liens arise by contract, by conduct of the parties, upon a showing of unjust enrichment, or where one has funds which in equity he should not be allowed to retain.
Perhaps the most comprehensive expression of the Colorado attitude concerning equitable liens is set forth in Valley State Bank v. Dean, 97 Colo. 151, 47 P.2d 924 (1935), wherein it was stated:
"In Fallon v. Worthington, 13 Colo. 559, 568, 22 P. 960, 962, 6 L.R. A. 708, 16 Am.St.Rep. 231, we quoted with approval the following statement in 1 Jones, Liens, § 27: `An equitable lien arises either from a written contract, which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity, out of general considerations of right and justice, as applied to the relations of the parties and the circumstances of their dealings.'
"In 17 R.C.L. pp. 604 and 605 it is said: `A party may, by manifest intent and agreement, create a security, charge or claim in the nature of a lien on real as well as on personal property whereof he is the owner or in possession, which a court of equity will enforce against him * * *. To dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien. * * In fact if a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a lien."
It seems probable, then, that Colorado would follow Charnesky v. Urban, supra, in permitting an equitable lien to be enforced in the proceeds from the sale of the bankrupt's exempt property.
For the reasons stated the question submitted by the referee is answered in the negative and the Orders of the referee of November 14, 1961, and December 12, 1961, are affirmed.