**In re Clarence Joseph EBEL, Jr., d/b/a Haystack Mountain Golf Course and Driving Range, d/b/a Golf Haystack, SSAN: 342–24–5731, Debtor.**

**Lois J. EBEL, Plaintiff–Appellant,**

**v.**

**Clarence Joseph EBEL, Jr., and Dennis King, Interim Trustee, Defendants–Appellees,**

**and**

**Robert Kayne E. Warren Goss, and W.F. Robinson, III, Intervenors–Appellees.**

Civ. A. No. 92–K–177.
Bankruptcy No. 90–10360 DEC.
Adv. No. 91–1158 DEC.

United States District Court,
D. Colorado.

Sept. 11, 1992.

**512**

Nancy D. Miller, Denver, Colo., Michael R. Enwall, French & Stone, Boulder, Colo., for Lois Ebel.

J. William Barnett, Longmont, Colo., for Dennis King.

George P. Bryson, Longmont, Colo., for Kayne, Goss & Robinson.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before me on an appeal from the bankruptcy court by Lois J. Ebel, the debtor's former wife. On December 9, 1991, the bankruptcy court dismissed her complaint to force the trustee to abandon a ½ interest in the Haystack Mountain Golf Course and Driving Range ("golf course"). The bankruptcy court found that the trustee's interest in the property as hypothetical judgment lienor, pursuant to 11 U.S.C. § 544(a), was superior to the wife's equitable resulting trust in the property because the wife had filed neither lien nor notice of lis pendens so as to put the trustee on notice of her claim.

### I. Facts and Procedural History

In July, 1985, Lois J. Ebel ("wife" or "creditor") filed to dissolve her marriage from Clarence Ebel, Jr., ("husband" or "debtor"). Mr. and Mrs. Ebel fought bitterly in the succeeding five years of dissolution proceedings. The husband was repeatedly cited for contempt, avoiding sanctions only by last minute payoffs of overdue maintenance on the courthouse steps. A quondam barterer and full-time tax protester, he repeatedly ignored the state district court judge's orders to cooperate and to provide pertinent financial information about his management of the golf course.

The husband's fiscal irresponsibility, intransigence and contempt for the judiciary and the legal system forced the state court to appoint, in July, 1987, a receiver for the sole, significant marital asset, a nine-hole golf course and driving range located just north of Boulder, Colorado. The husband and wife owned the golf course as tenants in common with each holding a ½ undivided interest in it. The state court dissolved the marriage on August 13, and 14, 1986, but retained jurisdiction over the division of marital property. The state court began a hearing on the permanent orders on March 8 or 26, 1990. During that hearing, the husband allegedly feigned illness, forcing yet another continuance upon the court. The court reset the hearing for June 12, 1990.

The debtor filed his chapter 7 bankruptcy on June 8, 1990, and thus did not attend or present any evidence at the permanent orders hearing that was held on June 14, 1990. The wife obtained relief from the automatic stay on July 20, 1990 for the limited purpose of allowing the state court to enter judgment on the permanent orders and to make a complete division of the marital property. The state court-appointed receiver continued to operate the golf course throughout the proceedings in bank-

ruptcy court. In 1990, the receiver paid both the wife and the trustee $25,947.56, representing 50% of the profits and earnings from the golf course. In 1991, the receiver paid each $39,500.

The state court awarded the golf course and all its buildings and appurtenances to Mrs. Ebel. It specifically noted that the debtor was willing to deprive illegally

> the federal and state governments of enormous amounts of money. His entire *modus operandi* has been to ignore the laws of the state and the country to satisfy his own ends and to ignore the rules and orders of the courts. It is difficult for this Court to believe that Mr. Ebel's utter contempt for the rule of law could translate into honor and truthtelling in the court.

*In re Marriage of Ebel,* # 85DR1206–5, slip op. at 5 (Boulder Dist.Ct. June 14, 1990). It found that the husband had singlehandedly and intentionally caused such huge losses to the marital estate that the only fair and equitable solution would be to award the golf course to the wife. The husband filed his first bankruptcy petition on March 31, 1989, under chapter 11 of the Code. Two months later, the bankruptcy court recommended that the case be dismissed under 11 U.S.C. § 305(a). Judge Weinshienk agreed and dismissed the case on September 21, 1989. Nine months later, on June 8, 1990, the debtor filed a voluntary petition under chapter 7 of the Code. In addition to his former wife, other major unsecured creditors included the IRS and the debtor's former lawyers, the three intervenors here ("the lawyers"). Collectively, the debtor owes the intervenors in excess of $100,000.

The wife filed her complaint to determine interest in property and for turnover on February 20, 1991. The lawyers sought intervention on March 27, 1991. The bankruptcy court granted intervention on March 29, 1991, and refused to reconsider its order when the wife objected. The wife moved for summary judgment on July 31, 1991. Her motion claimed that the golf course was not property of the bankruptcy estate because the state court had awarded

the debtor's interest in the property to her in the dissolution action. The court heard testimony and took evidence on the merits on November 4, 1991 and issued a written order on December 9, 1991, denying the motion for summary judgment and dismissing the wife's complaint. This appeal followed.

## II. Discussion

The wife argues that I should reverse the bankruptcy court for several reasons. I will discuss them seriatim.

### A. Intervention

■ The wife asserts that the bankruptcy court erred in allowing the lawyers to intervene in the adversary proceeding. I find no error. Fed.R.Civ.P. 24 governs intervention in an adversary proceeding. Bankr.R. 7024. Rule 24 requires intervention where a statute confers such a right to intervene, and permits intervention when the applicant's claim or defense and the main action have a common question of law or fact. Under 11 U.S.C. § 554, the trustee may not abandon property of the estate without notice to all creditors and an appropriate hearing where the creditors can be heard. Such a hearing, however, would not have been an adversary proceeding. *See* rule 7001 (scope of adversary proceedings does not include actions to force trustee to abandon property).

I conclude that the lawyers properly intervened. The wife's adversary complaint in essence sought to compel the trustee to abandon any interest in the golf course. Had it been so styled, the bankruptcy court would have been required to hear from the lawyers. I acknowledge that the issue perhaps should have been resolved in a contested hearing rather than an adversary proceeding. As I have said before, however, I see no reason to elevate form over substance. This is especially true in cases such as this where the procedural impact upon the complaining party was slight and unburdensome. Compare *In re Kennedy,* 143 B.R. 776, 778 (D.Colo.1992) (refusing to exalt form over substance) and *In re Lewis,* 142 B.R. 952, 955 ("In the absence of demonstrable prejudice, I will not reverse the bankruptcy court's decision merely to

enshrine form over substance.") with *In re Asher Development III, Inc.*, 143 B.R. 788, 789 ("in this case procedural informality has merged into and become a defect in substance, requiring me to deny the motion to reconsider."). Accordingly, I conclude that the lawyers properly intervened in the adversary proceeding.

### B. Res Judicata & Jurisdiction

■ The wife next asserts that the bankruptcy court was bound by principles of comity and res judicata to abide by the state court's determination that she should have the entire golf course. I disagree. On June 8, 1990, the debtor filed his petition in bankruptcy. On that date, the debtor and the wife were tenants in common as to the golf course. On that date, there had not been a state court judgment to which it might look for guidance and control. Thus, the doctrines of res judicata and collateral estoppel do not apply.

■ Furthermore, a stay was in effect as of that date which prevented the state court from proceeding without relief from the stay. As of the date of the filing of the petition, the bankruptcy court had absolute authority and jurisdiction to determine what property belonged to the estate itself. 28 U.S.C. 1471(e); *In re Gardner*, 913 F.2d 1515 (10th Cir.1990). The bankruptcy court committed no error in disregarding the state court judgment.

### C. Strong Arm Powers

■ The crux of the argument between the parties lies here. The wife asserts that as a matter of Colorado marital law she had a vested interest in the golf course (in the nature of a resulting trust) at the time of the divorce petition and that the debtor had only bare legal title to an undivided ½ interest thereafter. I agree, but only as a matter of state marital property law. As the Colorado Supreme Court put it:

at the time of the filing of the dissolution action in which the division of property will later be determined, a vesting takes place. This interest which has vested is inchoate only in the sense that, prior to the division, the property to be transferred to the wife has not been determined. Upon and after the filing of the action, the rights of the wife are analogous to those of a wife who can establish a resulting trust, irrespective of a divorce action, in the property of the husband. *In re Questions Submitted by the United States District Court for the District of Colorado*, 184 Colo. 1, 517 P.2d 1331, 1335 (1974). Such an interest, she asserts, was insufficient to create a bankruptcy estate since she herself owned the beneficial interest.

She thus claims that the debtor's interest in the property never passed into the estate because he only had bare legal title to the golf course when he filed his bankruptcy petition. This argument, which the bankruptcy court rejected, requires me to consider the relationship between 11 U.S.C. § 541(d) and 11 U.S.C. § 544(a)(3).

### A. Relationship between §§ 541(d) and 544(a)(3)

The bankruptcy court followed the analysis of several cases in this district which apply the majority view of sections 541(d) and 544(a)(3) of the Bankruptcy Code. *See Johnson v. Fisher (In re Fisher)*, 67 B.R. 666 (Bankr.D.Colo.1986); *In re Harms*, 7 B.R. 398 (Bankr.D.Colo.1980). Under 11 U.S.C. § 541(d), "property of the estate" includes

property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... [but] only to the extent of the debtor's legal title to such property [and] not to the extent of any equitable interest that the debtor does not hold.

11 U.S.C. § 541(d). On its face, § 541(d) thus excludes from the estate property that the debtor holds in constructive trust for another.

■ Section 541(a)(3) however, provides that the estate includes any interest in property that the trustee recovers by virtue of its strong arm powers, as defined in § 544. § 544(a) gives the trustee the rights and powers of a judicial lien or judgment creditor, and it may avoid any transfer of property of the debtor that a bona

fide purchaser could avoid under applicable state law. Under Colorado law, a bona fide purchaser prevails over the beneficiary of an unrecorded equitable interest, such as a constructive trust. *See Nile Valley Fed. Sav. & Loan Ass'n v. Security Title Guar. Corp.,* 813 P.2d 849, 853 (Colo.App.1991). Therefore, the trustee, as a bona fide purchaser under § 544(a)(3), can avoid an ex-spouse's inchoate interest in the debtor's marital property if he has no constructive notice of that interest. The ex-spouse's only option is to seek court permission to file a claim based on the value of this interest and then participate in the bankruptcy distribution as a general unsecured creditor. See, e.g., *Hohenberg v. Hohenberg (In re Hohenberg),* 143 B.R. 480 (Bankr.W.D.Tenn.1992); *In re Fischer,* 67 B.R. at 669–70.

■ I acknowledge that a growing minority of courts has expressed dissatisfaction with this result and has held that § 541(d) limits the trustee's § 544 powers. Under this interpretation, the trustee cannot avoid any interest in property that is excluded from the estate under § 541(d). See, e.g., *In re Glass,* 138 B.R. 272, 273 (Bankr.D.Colo.1992) (§ 541(d) limits trustee's ability to avoid ex-spouse's interest in condominium, awarded in pre-petition divorce decree, though interest not of record); *In re Perry,* 131 B.R. 763 (Bankr. D.Mass.1991); *In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991).

The seventh, ninth and eleventh circuits, along with many lower courts, follow the majority rule that § 541(d) does not limit the trustee's power under § 544(a)(3). See, e.g., *National Bank of Alaska v. Erickson (In re Seaway Exp. Corp.),* 912 F.2d 1125, 1128 (9th Cir.1990); *Belisle v. Plunkett,* 877 F.2d 512, 516 (7th Cir.1989), *cert. denied,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); *City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699, 705 (11th Cir.1987) *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988) (following majority rule but noting that drafters did not anticipate this conflict). See generally Annotation, *Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust under Section 544(a) of Bankruptcy Code,* 96 A.L.R.Fed. 100 (1989). To date, the tenth circuit has not ruled, and decisions from the bankruptcy court in this district are not consistent. Compare *In re Fischer,* 67 B.R. 666 (Bankr.D.Colo.1986) with *In re Glass,* 138 B.R. 272 (Bankr. D.Colo.1992).

I accept the majority approach in this case because the minority approach requires a construction of § 544(a) I am unwilling to make. The actual language of section 544 reads: "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property *of* the debtor or any obligation incurred by the debtor...." 11 U.S.C. § 544(a) (emphasis added). The minority view assumes that the only transfers the trustee may avoid are transfers *"by* the debtor; that can be the only meaning of the phrase 'transfer of property of the debtor.'" *In re Mill Concepts Corp.,* 123 B.R. at 941. I am unwilling to make such a construction. I thus conclude that § 541(d) does not limit the trustee's strong arm powers in § 544(a)(3).

### 2. Effect of Receivership

■ The wife alternatively argues that the receivership put the trustee on constructive notice of her interest, thus defeating its claim to good title. Even if the trustee's avoidance powers do apply to unrecorded interests held in constructive trust, she argues that the express language of § 544(a)(3) does not permit the trustee to succeed. Section 544(a)(3) gives the trustee the rights of a bona fide purchaser *from the debtor* at the time the case is commenced. Thus, for the purposes of § 544(a)(3), the question is whether a bona fide purchaser could have obtained good title from Mr. Ebel had he sold the golf course on the date the petition was filed. Because the property was in possession of a court-appointed receiver, the answer is no.

■ Under Colorado law, possession is constructive notice to a purchaser of the

rights of the party in possession. *Davis v. Pursel*, 55 Colo. 287, 134 P. 107, 111 (Colo. 1913). Purchasers of property must inquire of the possessor or they are held to have taken subject to whatever rights proper inquiry would have disclosed. *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.*, 40 Colo.App. 150, 574 P.2d 107, 111 (1977), *aff'd sub. nom. Cohen v. Thomas & Son Transfer Line, Inc.*, 196 Colo. 386, 586 P.2d 39 (1978); *Runyan v. Snyder*, 45 Colo. 156, 100 P. 420, 422 (Colo.1909). Although the receiver acts as an officer of the court which appointed him, he is also a fiduciary of the party ultimately determined to have rights in the property. *Zeligman v. Juergens*, 762 P.2d 783, 785 (Colo. App.1988); *see also Application of Northwestern Mut. Life Ins. Co.*, 703 P.2d 1314, 1317 (Colo.App.1985) (receiver does not hold funds it accumulates for property's record owner, but instead keeps such funds for distribution to party who court ultimately finds entitled to them.) Persons dealing with a receiver are charged with knowledge of his functions. *Hendrie & Bolthoff Mfg. Co. v. Parry*, 37 Colo. 359, 86 P. 113, 116 (Colo.1906). "Furthermore, where property is found to be in *custodia legis*, a buyer's actual or constructive notice of the receiver's appointment may not be relevant." *Wilzig v. Sisselman*, 209 N.J.Super. 25, 506 A.2d 1238, 1242 (N.J.Super.A.D.1986) *cert. denied* 107 N.J. 109, 526 A.2d 181 (1987). This is so because the title holder to property in receivership lacks the power to effectively transfer the property to a bona fide purchaser. "Levy of, or sale on, original, mesne, or final process against property in receivership, without the consent of the court appointing a receiver, generally is not permissible and has no effect other than to constitute contempt of court. Such a sale is illegal and void and passes no title to the purchaser." 65 Am.Jur.2d *Receivers* § 168 at 992–93 (1972); see also *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339 (Tex. 1976) ("The doctrine of *custodia legis* is different from the common law of lis pendens. The rule prohibiting interference with property *in custodia legis* is derived from the exclusive jurisdiction which arises out of possession of the res.")

Here, it is undisputed that the receiver was in possession of the golf course from the time he was appointed in July 1987 until Mr. Ebel filed for bankruptcy (except perhaps during the pendency of the first bankruptcy case). Therefore, because the golf course was in the actual possession of the receiver at the time Mr. Ebel filed for bankruptcy, the trustee is charged with constructive notice of Mrs. Ebel's inchoate interest in the property. Accordingly, a hypothetical sale by Mr. Ebel to the trustee (clothed as a bona fide purchaser) at the time of the petition would not have passed good title because the trustee had constructive notice of Mrs. Ebel's inchoate rights and because Mr. Ebel was powerless to convey. Therefore, the trustee, even as a bona fide purchaser, cannot avoid Mrs. Ebel's interest.

### III. Conclusion

For the foregoing reasons the decision of the bankruptcy court is reversed for further proceedings consistent with this decision.