**In re Harold A. RICHARDS, Debtor.**

**David E. Lewis, Chapter 7 Trustee, Plaintiff,**

**v.**

**James M. Hare, Defendant.**

**No. 01–15071 EEB.**

United States Bankruptcy Court, D. Colorado.

March 29, 2002.

James M. Hare, Parker, CO, for Defendant.

Robert F. Gauss, Evergreen, CO, for the Debtor.

Matthew D. Skeen, Georgetown, CO, for the Chapter 7 Trustee.

## ORDER AVOIDING EQUITABLE LIEN AND DETERMINING EXEMPTION

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER is before the Court on the request of the Plaintiff/Trustee to determine the interest of the bankruptcy estate in proceeds from the sale of the Debtor's car. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Central to this dispute is the question of whether the Trustee can exercise his avoidance powers under 11 U.S.C. § 544 to cut off an unperfected lien on the car or whether Section 541(d)[1] places the asset outside the bankruptcy estate due to the equitable lien claim of a creditor.

## I. STATEMENT OF THE CASE AND UNDISPUTED FACTS

The Debtor purchased a car with funds borrowed from a friend, James M. Hare (the "Creditor"). Both parties to the loan intended that it would be secured against the vehicle, but the Creditor failed to perfect his lien on the certificate of title prior to the Chapter 7 bankruptcy filing on April 13, 2001. David E. Lewis was appointed as the Chapter 7 trustee (the "Trustee"). The Debtor claimed the car as his exempt property and informed the Trustee that the Creditor had a lien on it. In the main bankruptcy case, the Trustee filed a Mo-

1. Unless otherwise specified, all references to "Sections" are to sections in Title 11, United States Code.

tion for Turnover, claiming that the vehicle was property of the estate and that the unperfected lien held by the Creditor was subject to avoidance. He also filed an Objection to the Debtor's claimed exemption in the vehicle. The Debtor filed a timely response, objecting to both the Motion for Turnover and the Objection to Exemption. (The Motion for Turnover, Objection to Exemption and Debtor's Response thereto are collectively referred to as the "Turnover/Exemption Pleadings.") Since this dispute arose, the Trustee has sold the car and is now holding its proceeds pending this determination.

In addition to filing the Turnover/Exemption Pleadings in the main case, the Trustee filed this adversary proceeding against the Creditor to avoid the unperfected lien. The Debtor, instead of the Creditor, filed an Answer. The Court has found the Creditor in default, but did not enter judgment on the Trustee's claim. It ruled that the Debtor has standing to defend this action. Subsequently, the Court formally consolidated the Turnover/Exemption Pleadings into this action and the parties have consented to the Court's entry of a judgment based on the pleadings. Neither the Complaint, the Debtor's Answer, nor the Turnover/Exemption Pleadings raise any genuine issue of material fact.

## II. AVOIDANCE OF EQUITABLE LIENS

Section 544 allows a trustee to step into the shoes of an "ideal creditor" in order to defeat the interest of a third party, if that interest could be defeated at the time of the bankruptcy filing under applicable non-bankruptcy law by: (1) a judicial lien creditor, per Section 544(a)(1); (2) a creditor who executes or levies on the debtor's property, per Section 544(a)(2); (3) a bona fide purchaser of real property,

per Section 544(a)(3); or (4) any actual unsecured creditor of the debtor that could avoid the interest under any applicable law, per Section 544(b)(1). In his Complaint, the Trustee pled a claim under Section 544, without specifying which subsections. Since the claim involves personal property and not real property, subsection 544(a)(3) is not applicable. The Trustee's failure to allege the existence of an actual unsecured creditor of the Debtor that could defeat the Creditor's security interest, causes the Complaint to fail to state a claim under Section 544(b). Accordingly, only Sections 544(a)(1) and (2) are implicated. If the Trustee's claim is successful, then under Section 550, any avoided transfer is recovered for the benefit of the entire estate. Section 551 provides, in pertinent part, that "[a]ny transfer avoided under section ... 544 ... is preserved for the benefit of the estate but only with respect to *property of the estate.*" (emphasis added).

Section 541 defines what is and what is not "property of the estate." Subsection 541(a)(3) includes within this property "[a]ny interest in property that the trustee recovers under section ... 550 ...." On its face, this would indicate that, if the Trustee can establish his claim to avoid the unperfected lien under Section 544(a)(1) or (2), then these proceeds would be included in the estate for future distribution to creditors. Section 541(d), however, belies this facile interpretation. It provides that:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the

extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Essentially, under Section 541(d), the trustee does not acquire greater rights than the debtor had to the property, in seeming contradiction of the trustee's avoidance powers and Section 541(a)(3), which includes avoided transfers among property of the estate.

Many courts have struggled to interpret the apparent contradiction in this statute. Can the equitable lien or constructive trust claim be avoided under Section 544 and, therefore, the asset be brought into the estate pursuant to Section 541(a)(3)? Or does Section 541(d) prevent property in which a third party claims an equitable interest from becoming property of the estate? There have been numerous decisions rendered on this issue, many issued in the late 1980's and early 1990's, including opinions from several circuit courts. Unfortunately, the Tenth Circuit has not ruled directly on this issue. *See In re Donahue,* 862 F.2d 259, 262 (10th Cir. 1988). While the rationales vary, the holdings of these decisions reflect a majority and minority view.

The minority view is represented by *In re Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985), in which the Fifth Circuit held that the limitations on the estate's property interests contained in Section 541(d) prevail over the trustee's strong arm powers in Section 544. "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." *Id.* at 1013. This statement, however, was arguably dictum insofar as the court ultimately held that the trustee would prevail in this case

because the creditor asserting a constructive trust claim, was not a creditor of the debtor, but a creditor of the debtor's creditor and the court refused to allow a "remote creditor" to "piggyback" on the rights of a constructive trust beneficiary or true owner of the subject personal property. *Id.* at 1015.[2]

The majority view is best exemplified by *In re Seaway Express Corp.,* 912 F.2d 1125 (9th Cir.1990), wherein the Ninth Circuit found no conflict between Sections 541(d) and 544(a). Congress amended Section 541(d) in 1984 to provide that its limitations would only apply to property otherwise brought into the estate through Section 541(a)(1) and (2). In other words, amended Section 541(d) only places limits on whether beneficial interests of third parties are to be included in property of the estate through Sections 541(a)(1) and (2). It makes no reference to Section 541(a)(3), which continues to add to property of the estate any property recovered through exercise of the trustee's avoidance powers.

> Section 541(d) qualifies the trustee's right under § 541(a) to succeed to certain property interests possessed by the *debtor* at the time of the filing of his bankruptcy petition. In contrast, § 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various *creditors* and *transferees* of the debtor ... and thereby insure[s] an equality of distribution among the debtor's general unsecured creditors.

*In re General Coffee Corp.,* 828 F.2d 699, 705 (11th Cir.1987)(quoting *In re Anderson,* 30 B.R. 995, 1009–10 (M.D.Tenn.1983)(emphasis added)).

**2.** While the *Quality Holstein* court was interpreting a prior version of Section 541(d), the Fifth Circuit continues to adopt the minority

position. *In re Haber Oil Co., Inc.,* 12 F.3d 426 (5th Cir.1994).

"Thus, §§ 541(d) and 544(a) should be construed to operate independently of one another." *In re Paul J. Paradise & Assocs., Inc.,* 249 B.R. 360, 367 (D.Del.2000). *See Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.1989).

Although we have no Tenth Circuit precedent, the district court took a position on this issue in *In re Ebel,* 144 B.R. 510 (D.Colo.1992). The *Ebel* court accepted the majority's interpretation "because the minority approach requires a construction of § 544(a) I am unwilling to make." *Id.* at 515. In an attempt to harmonize what it views as a conflict between these statutes, the minority construes Section 544(a) as allowing a trustee to avoid only transfers *by* a debtor, but not equitable interests asserted against property transferred *to* the debtor or continuing to be held by the debtor. *See In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991). This minority construction ignores the language of Section 544(a)(3), which "allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a 'transfer' by the debtor cannot be a necessary condition of the strong-arm power.... Congress granted the bankruptcy trustee enhanced powers over real property owned by the debtor at the commencement of the case and *not* transferred." *In re Paul J. Paradise & Assocs.,* 249 B.R. at 368.

In its defense, the *Mill Concepts* court adopted this construction of Section 544(a) in order to uphold what it perceived to be the legislative purpose behind Section 541(d).

> Section 541(d) and its history nevertheless express a clear intent to keep beneficial interests in express and constructive trusts out of the bankruptcy estate under any theory. Surely Congress must be held to have realized that a bona fide purchaser for value cuts off such interests. It makes no sense for

such concern to be shown for preserving these interests under one subsection of § 541 if they would be readily included under another subsection. The two subsections would then be strangers to each other, like ships passing in the night. A literal interpretation of § 544(a)(3) so as to apply the statute only to transfers *by* the debtor brings harmony among §§ 541(d), 541(a)(3) and 544(a)(3) in their application to trusts.

*In re Mill Concepts Corp.,* 123 B.R. at 945.

▮ What the minority loses sight of is the fact that these subsections of Section 541 actually operate cohesively to ensure that the property available for distribution to creditors of the estate is not diminished by the bankruptcy filing as opposed to what would be available to creditors outside bankruptcy. Sections 541(a)(1), (2) and (d) guarantee that the trustee will succeed to whatever rights the debtor had, no more and no less. Sections 541(a)(3) and 544(a) ensure that the bankruptcy creditors will be no worse off than if they had been allowed to exercise their rights under state law as judicial lien creditors on personal property or as bona fide purchasers of real property.

> Legislative history tells us that the strong-arm clause was added to the statute in 1910 in order to avoid "the evil of secret liens" which had been perpetuated by *York Manufacturing Co. v. Cassell,* 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782 (1906). The Court there held that an unfiled security interest, invalid under state law as to judicial lien creditors, was effective against the trustee in bankruptcy because the trustee was vested with no better title than the debtor.

*In re Mill Concepts Corp.,* 123 B.R. at 943 (footnote omitted). While their operation in particular circumstances may exceed this expectation, the general intent of the

several subsections of Section 541 is to preserve, rather than enhance, the state law rights of the various parties.

For this reason, the analysis only begins with the construction of these statutes. The inquiry then focuses on the treatment of the specific beneficial interest, i.e. an equitable lien or constructive trust claim, under applicable non-bankruptcy law. As to personal property, the court must determine whether a judicial or execution lien *creditor* would prevail under state law against the equitable interest. As to real property, the trustee is treated not as a lien creditor, but is armed with the added rights of a bona fide purchaser for value. These additional rights in regard to real property no doubt reflect legislative intent to place greater reliance on real estate recording statutes and/or the fact that equity should not provide special protection to one who has sat on his rights by not taking the simple extra step of recording something in the real estate records, such as a notice of lis pendens. While the bona fide purchaser typically prevails against all other interests, this is not always a foregone conclusion. In *In re Ebel*, the trustee was charged with constructive notice of the non-debtor ex-spouse's inchoate interest in a golf course owned by the debtor husband, because the golf course was in receivership. The property was in *custodia legis*, which imputed constructive notice to the trustee, despite his bona fide purchaser status and, thus, the trustee did not prevail. *In re Ebel*, 144 B.R. at 516.

It is also not a foregone conclusion that the majority's construction of these statutes will allow the trustee to cut off the purchaser's rights in promissory notes and deeds of trust, when possession and legal title remain in the mortgage servicer. Clearly, the language and legislative history of Section 541(d) sought to prevent the trustee of the servicing company from

usurping the true ownership rights of the purchaser in the context of secondary mortgage market transactions. S.Rep. No. 95–598, 95th Cong.2d Sess. 83–84 (1978), *reprinted in* L. King, Colliers on Bankruptcy at App. Pt. 4(e)(i)(15th ed. rev. 2001). The *Mill Concepts* court seems to assume that Section 544(a)(3) will allow this result unless its scope is limited to avoidance of transfers *by* the debtor. The sale of promissory notes, however, is not a real property transaction, despite the attendant assignment of an interest in the deeds of trust. At common law, the deed of trust follows the debt, the security being merely incidental and not severable therefrom. *See Kluge v. Fugazy*, 145 A.D.2d 537, 536 N.Y.S.2d 92 (2d Dep't 1988); *Kernohan v. Manss*, 53 Ohio St. 118, 41 N.E. 258 (1895). *See generally*, Nelson & Whitman, *Real Estate Finance* § 5.27 (3d ed. West Pub.Co.1994). Under Revised Article 9 of the Uniform Commercial Code, attachment of a security interest in a right to payment secured by a mortgage is also attachment of a security interest in the mortgage itself, which is governed by the Uniform Commercial Code. Colo. Rev. Stat. § 4–9–203(g). Since a personal property interest is involved, the outcome will depend on whether a judicial or execution lien creditor could cut off the interest of the assignee. The minority should not presume that, by adding Section 541(d), Congress intended to enlarge the assignee's state law rights, but only that Section 541 would not diminish state law rights available to assignees in the secondary mortgage market.

## III. STATE LAW TREATMENT OF EQUITABLE LIENS ON VEHICLES

Having concluded that Section 541(d) does not prevent the Trustee from exercising his avoidance powers, we must now consider whether the Trustee, as a

hypothetical lien creditor, would prevail under state law against this equitable lien claimant. In this case, the Creditor's equitable lien is asserted against a car. Security interests in motor vehicles are governed by Colorado's Certificate of Title Act, COLO. REV. STAT. § 42–6–101, *et seq.* COLO. REV. STAT. § 42–6–120(1) provides in pertinent part that "the provisions of the 'Uniform Commercial Code', title 4, C.R.S., relating to the filing, recording, releasing, renewal, and extension of chattel mortgages, as the term is defined in section 42–6–102(6), shall not be applicable to motor vehicles." Instead perfection of a security interest in a motor vehicle is governed by COLO. REV. STAT. § 42–6–120:

> Any mortgage or refinancing of a mortgage intended by the parties to the mortgage or refinancing to encumber or create a lien on a motor vehicle, to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner, shall be filed for public record and the fact of filing noted on the owner's certificate of title or bill of sale substantially in the manner provided in section 42–6–121 . . . .

■ Once these requirements for perfection have been met, a creditor cannot obtain a judicial lien superior to the security interest. *In re Martella,* 22 B.R. 649 (Bankr.D.Colo.1982). In the absence of recording and the notation on the certificate of title, the mortgage remains valid between the debtor and the mortgagee. COLO. REV. STAT. § 42–6–128. Third parties, such as the hypothetical lien creditor, however, can defeat the interests of a creditor holding an unperfected lien on a motor vehicle. On the date of the bankruptcy filing in this case, the security interest of the Creditor remained unperfected. Consequently, under Colorado law, the Trustee, as the hypothetical lien creditor, prevails over the equitable (unperfected) lien claim of the Creditor. Colorado's Certificate of Title Act operates as strictly as the real property recording statutes to cut off unrecorded interests, undoubtedly reflecting legislative intent to promote greater certainty in commercial transactions, by allowing parties to rely on the recording statutes.

## IV. AVAILABILITY OF EXEMPTION

■ Finally, the Debtor argues that, even if the Trustee is allowed to avoid the equitable lien, the Debtor remains entitled to an exemption in the car and, thus, he can pay his exempt proceeds to the Creditor, relying on *Weil v. Nevitt,* 18 Colo. 10, 31 P. 487 (1892) and *Rade v. Denver Pub. Schs. Credit Union,* 205 F.Supp. 336 (D.Colo.1962). At first blush, this argument appears to have merit. In *Rade,* the court affirmed the bankruptcy referee's order that the exempt portion of the proceeds from the sale of personal property be paid to the holder of an unrecorded purchase money chattel mortgage. In *Rade,* however, the validity of Debtor's exemption was not challenged by the trustee. The dispute was between the debtor, who claimed entitlement to his exemption, and the creditor, holding the unperfected purchase money security interest. As between these two parties, the *Rade* court found that the creditor's interest prevailed. *Id.* Colorado's Certificate of Title Act also recognizes the supremacy of the unperfected lien as between the debtor and the mortgagee. COLO. REV. STAT. § 42–6–128.

■ As between the Debtor and the Trustee, however, Section 522 is clear that the Trustee must prevail. A debtor cannot exempt property subject to the trustee's preserved lien position, unless the preserved lien is otherwise avoidable under Section 522. "Thus, generally, property that was voluntarily transferred by the

debtor and recovered by the trustee ... and preserved under section 551 cannot be exempted." 5 L. KING, COLLIER ON BANKRUPTCY ¶ 551.02[2], at 551–55 (15th ed. rev. 2001).

Section 522 provides several potential avoidance rights, including subsections (f), (g), (h), and (i). None of these subsections apply in this case. Subsection (f) does not apply to a purchase money security interest. Subsection (g) is predicated on either an involuntary transfer or a transfer that would satisfy Subsection (f)(2)'s requirements. Subsections (h) and (i) require the satisfaction of the elements of Subsections (f) or (g). In addition, they are all premised on the debtor's entitlement to an exemption. The Debtor has claimed that the car is exempt under COLO. REV. STAT. § 13–54–102(i) and (j). COLO. REV. STAT. § 13–54–102(i) exempts: "The stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books, and business materials of any debtor used and kept for the purpose of carrying on any gainful occupation in the aggregate *value* of ten thousand dollars." (emphasis added). COLO. REV. STAT. § 13–54–102(j) exempts: "(I) One or more motor vehicles or bicycles kept and used by any debtor in the aggregate *value* of three thousand dollars...." (emphasis added). "Value" is defined by COLO. REV. STAT. § 13–54–101(5) as "the fair market value of any property *less the amount of any lien thereon valid as between the owner of the property and the holder of such lien.*" (emphasis added).

The Debtor admits the existence of the equitable lien on the car in favor of the Creditor. In accordance with COLO. REV. STAT. § 13–54–101(5), the amount of his exemption is calculated after deduction of the amount of the lien. In the Report of Sale, filed in the underlying bankruptcy case, the Trustee reports that he sold the car for $3,600. The Debtor listed the Creditor's claim on his Schedule D in the amount of $7,000, of which he claimed $6,000 was secured by the value of the car. Since the Trustee sold the car in this case for less than the amount of the lienholder's debt, no exempt portion remains. Finally, "[n]one of the property described in section 13–54–102 shall be exempt from levy and sale on writ of attachment or writ of execution for the purchase price of such property." COLO. REV. STAT. § 13–54–103. When avoided, this purchase money security interest is preserved for the benefit of the estate. 11 U.S.C. § 551. The Bankruptcy Code preempts any contrary holding in *Weil v. Nevitt,* 18 Colo. 10, 31 P. 487 (1892).

## V. CONCLUSION

Accordingly, judgment shall enter in favor of the Trustee and against the Debtor and Mr. Hare, avoiding the equitable lien of Mr. Hare pursuant to 11 U.S.C. §§ 544(a)(1) and (2), preserving it for the benefit of the estate under 11 U.S.C. §§ 550 and 551, and denying the Debtor's claim of exemption in the proceeds from the sale of the subject motor vehicle.