In re Clarence Joseph EBEL, Jr., Debtor.

Lois J. EBEL, Plaintiff–Appellee,

v.

Clarence Joseph EBEL, Jr., and Dennis King, Interim Trustee, Defendants–Appellants,

and

Robert Kayne, E. Warren Goss, and W.F. Robinson III, Intervenors and Defendants–Appellants.

Civil Action No. 95–K–1860.

United States District Court, D. Colorado.

March 26, 1996.

Philip D. Geil, Geil, Jeffers & Waitkus, P.C., Boulder, CO, for debtor.

Nancy D. Miller, Nancy D. Miller, P.C., Denver, CO, for appellee.

J. William Barnett, Southham & Barnett, Aurora, CO, for appellants.

George Philip Bryson, Philip Bryson Law Office, Longmont, CO, for intervenors.

## MEMORANDUM OPINION AND ORDER ON APPEAL

KANE, Senior District Judge.

This is another in a series of appeals brought by debtor Clarence Ebel, Jr. in these bankruptcy proceedings. The dispute centers on the proposed division of certain marital assets, specifically a nine-hole golf course, in which both Clarence Ebel and his former wife claim an interest. Mr. Ebel appeals from Judge Cordova's July 14, 1995 Order on Remand from appeal No. 94–Z–2102, in which he reaffirmed an earlier order granting Lois Ebel's motion for relief from the Bankruptcy Code's automatic stay provision. Mr. Ebel attacks the July 14 Order and the various orders it reaffirms on numerous grounds, none of which I find persuasive. I affirm the Order, and remand the action back to the Bankruptcy Court for further proceedings.

### I. *FACTS AND PROCEDURAL HISTORY*

A previous account of the Ebels' rancorous divorce proceedings, and Mr. Ebel's intransigence throughout, can be found in my opinion in *Ebel v. Ebel*, 144 B.R. 510 (D.Colo. 1992) (my "1992 Opinion"). Given the sweeping scope of the instant appeal, a recap, together with an update of the proceedings since 1992, is in order.

Lois Ebel initiated divorce proceedings against her husband in July, 1985. The parties fought bitterly through years of dissolution proceedings. Mr. Ebel was cited for contempt over seven times, avoiding sanctions with last minute payoffs of maintenance on the courthouse steps. He repeatedly ignored the state district court's orders to cooperate and provide pertinent

financial information. Due to Mr. Ebel's financial irresponsibility and "demonstrated contempt" for the judicial process, the court appointed a receiver, who was given possession and control over the golf course. At the time the Ebels owned the golf course as tenants-in-common.

The state court dissolved the marriage in August 1986, but retained jurisdiction over the division of marital property. The permanent orders hearing was rescheduled and continued at Mr. Ebel's behest on several occasions. The hearing actually began in March 1990, but was continued yet again when Mr. Ebel allegedly feigned illness. On June 8, 1990, four days before the rescheduled date, Mr. Ebel filed a voluntary Chapter 7 bankruptcy petition. Relying on the automatic stay provisions of 11 U.S.C. § 362, Mr. Ebel did not attend or present any evidence at the June 12, 1990 permanent orders hearing.[1] During that proceeding, the state court awarded 100% of the marital property, including the golf course, to Mrs. Ebel.

Lois Ebel sought relief from the bankruptcy stay by motion dated June 18, 1990. Judge Cordova granted the motion in an order dated July 20, 1990 (the "July 1990 Order"). (R.Vol. I, Tab 17.) The state court entered judgment on its June permanent orders on August 10, 1990. Mr. Ebel did not challenge the July 1990 Order granting relief from the stay. Instead, he appealed the August state court judgment to the Colorado Court of Appeals, arguing, *inter alia*, that the state court was without jurisdiction to enter the permanent orders by operation of the automatic stay. The Court of Appeals rejected Mr. Ebel's argument, and affirmed the permanent orders. *See In re Marriage of Ebel*, 874 P.2d 406 (Colo.App.1993), *reh'g denied* Dec. 23, 1993, *cert. denied* May 23, 1994.

On February 20, 1991, while Mr. Ebel's state court appeal was pending, Mrs. Ebel filed a Complaint against the trustee in bankruptcy. She sought an order compelling the trustee to abandon his claimed interest in the golf course and for turnover of the property. Mr. Ebel's former attorneys were granted leave to intervene in this proceeding. On July 31, 1991, Lois Ebel moved for summary judgment, arguing that Mr. Ebel's interest in the golf course as a tenant-in-common did not pass to the bankruptcy estate when he filed his petition. Judge Cordova denied the motion on December 9, 1991, and dismissed her Complaint. Mrs. Ebel appealed.

I reversed the dismissal in my 1992 Opinion. I found the trustee had constructive notice of Mrs. Ebel's inchoate interest in the property by virtue of the fact the state court had appointed a receiver to manage it during the ongoing dissolution proceedings. I determined the trustee could not avoid Mrs. Ebel's interest in the property, and remanded the case to the bankruptcy court for further proceedings. *See Ebel v. Ebel*, 144 B.R. at 516.

After the issuance of my 1992 Opinion, the Ebels engaged in lengthy settlement negotiations. Those negotiations ultimately failed, and on March 25, 1994, Judge Cordova issued an order on remand from my 1992 Opinion granting Mrs. Ebel's 1991 motion for summary judgment. The court held that even though the permanent orders hearing of July 14, 1990 technically violated the § 362 automatic stay then in effect, the July 1990 Order "ratified" the state court action and adopted it as an order of the bankruptcy court. He made clear his intent in granting relief from the stay was to adopt and give retroactive effect to the state court's decision regarding Mrs. Ebel's interest in the golf course.

The trustee moved for reconsideration, raising due process concerns with the court's March 25 Order and, for the first time, concerns regarding the disposition of three building lots and other appurtenances to the golf course that were not specifically addressed in the state court's final orders. Judge Cordova granted the motion, and on

---

1. Mr. Ebel's attorney, Mr. Goss, appeared at the second permanent orders hearing for the purpose of asking the court for leave to withdraw from representing Mr. Ebel. Mr. Ebel, after filing his petition for Chapter 7, discharged his attorneys. The transcript reveals Mr. Ebel was aware the permanent orders hearing was going to proceed with or without him. Judge Bailin allowed Mr. Goss to withdraw.

June 10 entered an order amending the March 25 Order and modifying the scope of relief it gave Mrs. Ebel in July 1990. (R.Vol. II, Tab 74.) The court ruled that while there were equitable reasons to adopt the state court's disposition of the marital assets, doing so raised due process concerns because "it appeared" Mr. Ebel did not participate in the second portion of the permanent orders hearing. *Id.* The court agreed Mrs. Ebel had no more than a ½ inchoate interest in the building lots and golf course appurtenances not included in the state court's orders, and entered summary judgment as to them in the trustee's favor. *Id.* The court concluded the matter of dividing the remaining marital property should be returned to the state court, and modified the automatic stay to allow the parties to do so.

Lois Ebel then filed a Rule 59(e) motion to amend, reminding the court of the reasons underlying its March 1994 Order, and urging reconsideration of the June 10, 1994 Order. The motion was fully briefed and on August 9, 1994, Judge Cordova vacated the June 10 Order and reinstated the order of March 25, 1994. (R.Vol. II Tab 88).

In his August 9, 1994 order, Judge Cordova revisited the arguments he initially found persuasive in the trustee's motion for reconsideration of the March 25, 1994 Order. With respect to the due process concerns raised on behalf of Mr. Ebel, Judge Cordova found Ebel had received a full airing of his due process concerns when he appealed the state court's permanent orders to the Colorado Court of Appeals. Specifically, he found Ebel had notice of the permanent orders hearing, instructed his attorney to withdraw, and chose not to appear. With respect to the golf course itself, Judge Cordova reiterated his intent in the July 1990 and March 25 Orders to ratify and adopt as an order of the bankruptcy court the permanent orders issued by the state court in June 1990. *See* Order (R.Vol. II, Tab 88) at 1.

Both the trustee and Mr. Ebel appealed from the August 9 Order. Those appeals (consolidated as Civil Action Nos. 94–Z–2102) were dismissed without prejudice by Judge Weinshienk on February 25, 1995, and remanded to the bankruptcy court for determination of whether the court's August 9, 1994 order should be vacated on jurisdictional grounds. On July 14, 1995, Judge Cordova reaffirmed his August 9, 1994 order and also determined that, with respect to the building lots or other golf course appurtenances, any ruling as to the parties' interest in them was "premature." He then vacated his order granting summary judgment in favor of the trustee on those issues. *See* Order (R.Vol. II, Tab 143) at 9. This appeal ensued.

## II. *DISCUSSION*

Mr. Ebel seeks reversal of the bankruptcy court's July 14, 1995 Order on remand and reinstatement of the Order dated June 10, 1994. He claims the June Order properly determined that the March 24, 1994 Order was void because it deprived him of due process and purported to revive an order issued in violation of the automatic stay. In the alternative, Ebel argues the bankruptcy court was without jurisdiction to reconsider or vacate the June Order because Mrs. Ebel's Rule 59(e) motion to amend was untimely. I discuss these issues seriatim.

### A. *Lois Ebel's June 1994 Motion to Amend*

Lois Ebel sought relief from the bankruptcy court's June 10, 1994 Order by filing a motion to amend pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Mr. Ebel asserts the bankruptcy court erred in failing to deny the motion as untimely and in unilaterally treating it as a motion for relief from judgment under Rule 60(b). The argument is without merit.

A Rule 59(e) motion to alter or amend a judgment must be filed no later than ten days after the date judgment enters. Fed. R.Civ.P. 59(e). Mr. Ebel argues his former wife's citation to Rule 59(e) in her motion bound her to the ten-day filing period, citing *Van Skiver v. United States,* 952 F.2d 1241 (10th Cir.1991). Mr. Ebel's reliance on *Van Skiver* misplaced.

*Van Skiver* instructs that Rules 59(e) and 60(b) are two distinct but often interchangeable rules. Which rule applies to a motion depends essentially on the time a motion is served. 952 F.2d at 1243. The

decision of whether to grant relief from a judgment under Rule 60(b) falls squarely within the discretion of the court. Based on the record before me on appeal, I see no abuse of discretion in treating the motion filed by Mrs. Ebel as a Rule 60(b) motion for relief from judgment.

### B. *The July 1990 Order*

Having determined the bankruptcy court did not err in revisiting its June 10 Order per Mrs. Ebel's request, I go on to consider the merits of Mr. Ebel's appeal.

Two alternative arguments form the cornerstone of this appeal. First, Mr. Ebel claims Judge Cordova never intended in his July 1990 Order to "ratify" or adopt as an order of the bankruptcy court the permanent orders issued by the state court in June 1990. *See* Resubmitted Opening Br. at 11. As a result, the March 25, 1994 order, which Mr. Ebel claims "for the first time" characterized the July 1990 order as a "ratification," deprived him of due process and is void as a matter of law. *Id.* In the alternative, Mr. Ebel argues that even if the court intended in July 1990 to ratify the state court's permanent orders, the ratification was void because it violated the automatic stay. I reject both arguments.

■ My initial concern is with the effect, if any, of Mr. Ebel's failure to appeal from July 1990 Order in the first instance. Ebel challenged the order as part of his state court appeal, but he made no effort to appeal it directly. He suggests that because the bankruptcy court expressed uncertainty as to the effect the July 1990 Order would have on the proceedings, the order did not constitute an "annulment" of the automatic stay capable of being appealed. Resubmitted Opening Br. at 10–11. The focus on the term "annulment" is perplexing. Section § 362(d) permits the bankruptcy court to grant relief from the automatic stay by "terminating, annulling, modifying, or conditioning [it]." The "modification" allowed by the court in this case was no less appealable than an "annulment" would have been. Ebel makes no other attempt to explain his inaction and provides no authority to support his position that the July 1990 Order was unappealable.

Having failed to do so, I conclude Mr. Ebel waived his right to appeal the July 1990 Order.

■ Assuming, for the sake of argument, that there were sufficient ambiguities in the order to justify Mr. Ebel's failure to appeal, none of the arguments he raises here warrants reversing it. First, the July 1990 Order did not violate Mr. Ebel's due process rights. Mr. Ebel claims he had no notice that his property rights would be affected if his former wife's motion for relief from stay were granted. The record belies the assertion; Mr. Ebel filed an objection to Mrs. Ebel's motion before it was granted, which suggests he was aware of the relief sought and was heard.

Nor is there support for the assertion that Lois Ebel "induced" the state court to proceed with the permanent orders hearing "in bad faith." The state court had long been involved with the Ebel's divorce proceedings and knew better than anyone the relative motivations of the parties.

■ Mr. Ebel's assertion that the March 25, 1994 order constituted an "out of the blue" ratification of the July 1990 Order in violation of his due process rights is similarly without merit. While the timing of the order 1½ years after my September 1992 Opinion undoubtedly surprised the parties, the delay is explained by the settlement negotiations that ensued after I remanded the adversary proceeding between Mrs. Ebel and the trustee back to the bankruptcy court. Mr. Ebel's assertion that the substance of the March 25 Order surprised him is not credible. Judge Cordova made clear in the March 25 Order that he was reaffirming his July 1990 ruling, not announcing it "for the first time." "The equities support a retroactive relief from stay," he wrote, "which is exactly what occurred with the Court's July 20, 1990 order." (R.Vol. II, Tab 55 at 6.) Further, Mr. Ebel challenged the very issues he claims were first raised in the March 25 order in his 1990 state court appeal, where he argued that the permanent orders were issued in violation of the automatic stay.

 Finally, I reject the assertion that the March 25 order ran afoul of my September 1992 opinion. While I questioned, in dicta, the viability of state court orders issued in violation of the automatic stay, I did not consider the bankruptcy court's authority to ratify those orders or the fact that it did so in July 1990.[2] Clearly it is within the bankruptcy court's discretion to modify the automatic stay as it deems appropriate. The decision here that Mrs. Ebel was entitled to relief from the stay was not an abuse of discretion.

### III. CONCLUSION

Mr. Ebel's assertion that an affirmance of the bankruptcy court's order "will deprive him of his day in court" is specious at best. Mr. Ebel has spent a decade in court litigating the issues raised. His impulsive and obdurate approach to the legal process is apparent in his hiring and firing of counsel, his decisions to appear and not appear for hearings and even in his decision to file for bankruptcy when he did. Mr. Ebel has had his day in court and those of a few others as well. Any further delay in concluding this matter is unwarranted and would be an injustice to all involved.

> We shall not cease from exploration and the end of all our exploring will be to arrive where we started and know the place for the first time.

T.S. Eliot, *Four Quartets.*

For the foregoing reasons,

I AFFIRM the bankruptcy court's July 14, 1995 Order on Remand from the Federal District Court. That Order reaffirmed the bankruptcy court's orders dated August 9 and March 25, 1994, and vacated the order dated June 10, 1994. The appeal is DISMISSED, with the parties to bear their own costs on appeal.

---

2. The rulings in my 1992 opinion focused on the trustee's rights in bankruptcy to an asset of the estate that, at the time the petition was filed, was held jointly by the debtor and his former wife and was being managed by a receiver appointed to avoid mismanagement of the asset by the debtor. I held the trustee could not exercise control over it under those circumstances.