In re Angela Marie GARBERDING,
Debtor.

Jeffrey L. Hill, Trustee, Plaintiff,

v.

Gordon Koching, a/k/a Cory G.G.
Koching, and Angela Marie
Garberding, Defendants.

Bankruptcy No. 04–10632–SBB.
Adversary No. 04–1730–SBB.

United States Bankruptcy Court,
D. Colorado.

June 7, 2005.

Matthew D. Skeen, Georgetown, CO, for Jeffrey L. Hill, Trustee, Plaintiff.

Stephen E. Berken, Denver, CO, Pro se, Centennial, for Gordon Koching a/k/a Cory G.G. Koching, Angela Marie Garberding, Defendants.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for the trial of the Plaintiff's Complaint. The Court, having reviewed the file and being advised in the premises, makes the following findings of fact, conclusions of law, and Order.

For the reasons stated herein, all claims in Plaintiff's Complaint are DENIED and the Plaintiff's Complaint is DISMISSED.

### I. *Facts* [1]

The plaintiff, Jeffrey L. Hill ("Plaintiff"), the Chapter 7 Trustee of the bankruptcy estate of Angela Marie Garberding ("Debtor/Defendant"), brought this adversary proceeding against the Debtor/Defendant and her boyfriend, Gordon Koching, a/k/a Cory G.G. Koching ("Defendant Koching") seeking turnover of a 1983 or 1984 500 SEC Mercedes Benz ("Mercedes").[2]

---

1. The parties have either stipulated to, or otherwise not contested, the findings of fact set forth in this Memorandum Opinion and Order.

2. The Debtor/Defendant, in her Schedules B and C, and the Plaintiff, in his Complaint, refer to a 1984 model year Mercedes Benz. The parties, in their Pretrial Statement (Dock- et # 12), refer to either a 1983 or 1984 model year. The Plaintiff's Exhibit 1 (a State of Colorado title search) reflects a 1983 model year Mercedes Benz. For the reasons stated in this opinion, whether the vehicle is of 1983 or 1984 vintage is not determinative of the issues presented to the Court.

In the underlying bankruptcy case, the Debtor/Defendant scheduled the Mercedes in her Schedule B. She placed a value on the vehicle of $1,050.00. In the form of the schedules filed, the Debtor/Defendant is directed to "list all personal property of the debtor of whatever kind" in Schedule B. In describing the Mercedes, the Debtor/Defendant stated that the Mercedes was "titled in Debtor's name but paid for an used by Debtor's boyfriend." The Debtor/Defendant also claimed the Mercedes exempt pursuant to COLO.REV.STAT. § 13–54–102(1)(j)(I).[3]

The Plaintiff demanded that the vehicle be turned over to him to be liquidated and the proceeds distributed to creditors. The Debtor/Defendant responded to the trustee stating that she believed that her boyfriend, the Defendant Koching, owned the vehicle. The Defendant Koching has possession of the automobile and uses the vehicle. He claims that it belongs to him and that it is not property of the Debtor/Defendant's bankruptcy estate.

The parties, at trial, stipulated that the Mercedes was purchased in December of 1998. The loan was entered into by the Debtor/Defendant because Defendant Koching was unable to get a loan to finance the Mercedes.[4] The loan term was forty-eight months with the first payment due in February of 1999. Of the forty-eight payments, seven were made from Debtor/Defendant's bank account.[5] Despite being made from Debtor/Defendant's bank account, Defendant Koching tendered the same amount to Debtor/Defendant as reimbursement for the car payments made on the Debtor's account. In addition, one other payment was made on her parents' bank account. This payment was paid in consideration of Defendant Koching's installation of hardwood floors in Debtor/Defendant's parents' home. In other words, Defendant Koching, in lieu of taking the compensation himself, directed that the payment for his installation of the floors go to payoff the Mercedes. The remaining forty payments were made by Defendant Koching. The only evidence of value of the Mercedes is that it is worth between $1,000.00 and $1,300.00.

The parties further stipulated that the Debtor/Defendant never made a single payment out of her own funds on the loan, the insurance,[6] or maintenance of the Mercedes. Moreover, Defendant/Debtor has never driven the Mercedes because she has her own Nissan Altima. Nevertheless, the loan for the Mercedes was in Debtor/Defendant's name and the Mercedes was and is titled in Debtor/Defendant's name.

The within Complaint was filed on July 21, 2004. Only Defendant Koching filed an Answer (filed on August 9, 2004). The parties do not dispute that the Debtor/Defendant is in default, but that no default judgment has yet been sought against her.

## II. *Issue*

The issue before the Court is whether the Plaintiff, in accordance with 11 U.S.C.

---

3. COLO.REV.STAT. § 13–54–102(1)(j)(I) allows a person in Colorado to exempt "one or more motor vehicles or bicycles kept and used by any debtor in the aggregate value of three thousand dollars."

4. Although this factual finding is not stipulated to, it is not otherwise contested.

5. Specifically, the May, June, July, August, and October, 2001 payments and the May, 2002 payments were made on Debtor/Defendant's bank account. In November of 2002, Debtor/Defendant's parents made a payment of $1250.00 to pay off the loan on the Mercedes.

6. The Safeco Insurance Company of America Automobile Policy Declarations indicates that the insured persons on the vehicle were the Debtor/Defendant and Defendant Koching.

§ 544(a), may avoid any equitable interest that Defendant Koching has in the Mercedes so as to make the Mercedes—the legal and equitable interests therein—property of the estate.

### III. *Discussion*

#### A. 11 U.S.C. § 541 Versus 11 U.S.C. § 544

Section 541 defines what constitutes property of the estate. The focus of this case is on subsection (d) of this Section, which provides that the estate is comprised of:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Defendant Koching, throughout this proceeding, asserts that Debtor/Defendant only holds "bare legal title" within the meaning of this section. Since the Defendant Koching has made all payments on the loan, the insurance, and the repairs of the Mercedes, he contends that he is the beneficial or equitable owner of the Mercedes. Consequently, Defendant Koching argues that the Debtor's "bare legal title" to the Mercedes does not constitute an economic interest such that it is not part of the estate.

Pursuant to 11 U.S.C. § 544(a),[7] the Plaintiff is asserting the rights of a judicial lien creditor who extended credit to the Debtor/Defendant at the time of the commencement of the case and has rights to avoid any interest in property which could have been avoided by such judicial lien. As the Honorable Elizabeth E. Brown, Bankruptcy Judge, of this District has noted,

> Essentially, under section 541(d), the trustee does not acquire greater rights than the debtor had to the property, in seeming contradiction of the trustee's avoidance powers [under 544(a)] and Section 541(a)(3), which includes avoided transfers among property of the estate.[8]

Judge Brown went on to discuss the split in the case law dealing with this dilemma,

7.  11 U.S.C. § 544(a) provides:
    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
    (2) a creditor that extends credit to the debtor at the time of the commencement

of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

8.  *Lewis v. Hare (In re Richards),* 275 B.R. 586, 589 (Bankr.D.Colo.2002).

noting that the Tenth Circuit has *not* ruled directly on the seeming contradiction between 11 U.S.C. §§ 541(a)(3) and (d) and 544(a).[9] In her final analysis, she concluded that the majority view was the best approach; that is, the trustee's strong-arm powers under 11 U.S.C. § 544 take precedence over a party claiming a beneficial interest in property titled in the name of the debtor.[10]

■ This Court concurs with Judge Brown's conclusions resolving the conflict between 11 U.S.C. §§ 541 and 544. In other words, a trustee, *under appropriate facts and circumstances*, has the ability to exercise his strong-arm powers to recover, for the benefit of the estate, property that the debtor held subject to an equitable lien, *as long as the trustee, as a hypothetical lien creditor, would prevail under state law against an equitable lien claimant.*

■ Nevertheless, the inquiry does not stop here. The issue presented to this Court and the facts herein are *not* identical to those in the *Richards* case and require further examination and discussion. In *Richards*, the trustee was attempting to avoid an unperfected lien of a creditor. Here, the Defendant Koching does not assert that he holds a lien of any sort in the Mercedes. Instead, he is asserting *ownership in*—that is, *beneficial ownership and economic interest in*—the Mercedes. The cornerstone of the analysis herein is whether the Plaintiff would prevail under state law.[11]

### B. State Law Governs Rights and Title to Property

■ "For the purposes of most bankruptcy proceedings, '[p]roperty interests are created and defined by state law.' "[12] Once a determination as to the property interest is made under state law, however, the Court must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate.[13]

Thus, the Court must first determine whether, under the law of Colorado, the Debtor/Defendant's certificate of title demonstrates that the Mercedes is conclusively and decisively property of the Debtor/Defendant. If it is, the Plaintiff prevails. If not, the Court must then determine to what extent Debtor/Defendant's interest in the Mercedes is property of the estate under federal bankruptcy law and what rights the trustee may succeed to in such interest or rights in the Mercedes.

### C. The Mercedes is Not Property of the Estate

■ Pursuant to COLO.REV.STAT. § 42–6–107, a certificate of title shall be *prima facie* evidence of the matters contained therein.[14] The Plaintiff cites to *Doenges-*

9. *Id.*

10. *Id.* at 589–593. In part, Judge Brown also relied on a District of Colorado opinion on this issue in *In re Ebel*, 144 B.R. 510 (D.Colo. 1992) that reached the same conclusion.

11. 11 U.S.C. § 541; *see, e.g., Id.* at 591–92; and *see* discussion *infra* in Section III(B) of this Memorandum Opinion and Order.

12. *Ogden v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir.2002) quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir.1998).

13. *Ogden*, 314 F.3d at 1197.

14. Colo.Rev.Stat. § 42–6–107 provides:

(1)(a) All certificates of title to motor vehicles issued under the provisions of this part 1 shall be mailed to the applicant, except as provided in section 42–6–124, and information of the facts therein appearing and concerning the issuance thereof shall be retained by the director and appropriately indexed and filed in the director's office.

*Glass, Inc. v. General Motors Acceptance Corp.*[15] for this proposition. But the Plaintiff stops short of advising this Court of the full quotation in this opinion and other cases seemingly on par with the present matter.[16] "A certificate of registration is presumptive evidence of ownership of an automobile *but the presumption is rebuttable.*"[17] Indeed, "a certificate of title does not represent conclusive proof of ownership."[18] To overcome this presumption, Debtor/Defendant herein must demonstrate that, under the facts of the case, that title alone does *not* determine ownership.[19]

■ The stipulated facts in this adversary proceeding demonstrate that: (1) the loan for the Mercedes was in Debtor/De-

---

Such certificates may be electronic records pursuant to rules adopted by the director and, in addition to other information that the director may by rule from time to time require, shall contain the make and model of the motor vehicle for which the certificate is issued, or the record is created, where such information is available, together with the motor and serial number of the vehicle, if any, and a description of such other marks or symbols as may be placed upon the vehicle by the vehicle manufacturer for identification purposes.

(b) The department may require those vehicle-related entities specified by regulation to verify information concerning any vehicle through the physical inspection of such vehicle. The information required to be verified by such a physical inspection shall include, but shall not be limited to, the vehicle identification number or numbers, the make of vehicle, the vehicle model, the type of vehicle, the year of manufacture of such vehicle, the type of fuel used by such vehicle, the odometer reading of such vehicle, and such other information as may be required by the department. For the purposes of this paragraph (b), "vehicle-related entity" means any county clerk and recorder or designated employee of such county clerk and recorder, any Colorado law enforcement officer, any licensed Colorado dealer, any licensed inspection and readjustment station, or any licensed diesel inspection station.

(2) The electronic record of the certificate or the paper version of the certificate shall also have noted, in a place to be provided therefor, a description of every lien and encumbrance to which the motor vehicle is subject, as appears in the application for the certificate of title or as is noted and shown to be unreleased upon any certificate of title issued after August 1, 1949, for such vehicle, including the date of such lien or encumbrance, the original amount secured by the vehicle, the person named as lienee or encumbrancee in the lien or encumbrance, and the county in which the lien or encumbrance appears of record, if it is of public record. The certificates and electronic records shall be numbered consecutively by counties, beginning with number one. The certificate of title filed with the director's authorized agent shall be prima facie evidence of all of the matters contained in the record and that the person in whose name said certificate is registered is the lawful owner of the vehicle described in the record. Except as provided in section 42–6–118, said certificate shall remain in force and effect from and after the filing thereof until such time as the vehicle described in the record is sold or the title to the vehicle is otherwise transferred.

15. 175 Colo. 518, 488 P.2d 879 (Colo.1971) (the court noted the Colorado law, but then discussed the distinction between certificates of registration and certificate of title under *New York* law).

16. In fact, at trial, counsel for the Plaintiff suggested that the certificate of title is "binding and unrefutable."

17. 175 Colo. at 525, 488 P.2d at 882 (emphasis added).

18. *Martinez v. Allstate Insurance Co.*, 961 P.2d 531, 533 (Colo.App.1997)

19. *Bernstein v. Sommer (In re Sommer)*, 28 B.R. 95, 97 (Bankr.D.Colo.1983). The Court notes that most of developed Colorado case law addressing the rebuttable presumption and when it should be overcome is usually found in the context of tort law. *See, e.g., Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781 (Colo.App.2000) and *Martinez*, 961 P.2d 531.

fendant's name, (2) the Mercedes was and is titled in Debtor/Defendant's name, (3) Debtor/Defendant has never made a single payment out of her own funds on the loan, the insurance, or maintenance of the Mercedes, and (4) that she has never driven the Mercedes. In a case very similar to this one, the Honorable John F. McGrath, Bankruptcy Judge for the District of Colorado, concluded that a vehicle was not property of the debtor's estate where: (1) the vehicle was purchased in the name of the debtor and his son with funds belonging *only* to the debtor's son, a minor, (2) the debtor never used the vehicle, and (3) the debtor never intended to have an interest in the vehicle.[20] In reaching this conclusion, the Court held:

> The father's interest created by his name on the Bill of Sale and Application for Title seems, therefore, to be in the nature of a resulting trust. The marks of a resulting trust are found in *First National Bank of Denver v. Harry W. Rabb Foundation*, 29 Colo.App. 34, 479 P.2d 986 (1970).
>
> > "... one in which a party, through no actual or constructive fraud, becomes invested with legal title, but holds that title for the benefit of another..." *First National Bank*, [29 Colo.App. 34,] 479 P.2d 986.
>
> The fact that the Debtor has not done anything to remove his name from the Bill of Sale or the application for Colorado title since the son reached the age of contractual majority does not change our finding that the actual ownership of this automobile is in [debtor]. Therefore, we find the [vehicle] is not property of the Debtor's estate.[21]

Does Judge McGrath's case square up with Judge Brown's *Richards* opinion? The Court concludes that it does. Judge Brown noted in her decision that "Sections 541(a)(1), (2) and (d) guarantee that the trustee will succeed to whatever rights the debtor had, no more or no less."[22] The Court finds it not unimportant that counsel for the Plaintiff stated during argument that because the car was and is titled in Debtor/Defendant's name on the day she filed bankruptcy, she could have transferred good title to a third-party purchaser. *Counsel acknowledged, however, that she might be liable to Defendant Koching if she had done so.* By implication, counsel acknowledges, *at the very least,* that there might be some legal right that Defendant Koching has in the Mercedes. If so, then, if the Plaintiff acquires and sells the vehicle, is he not potentially liable to Defendant Koching? The Court concludes that under the stipulated facts and circumstances of this case, the Plaintiff succeeds to the rights the Debtor/Defendant had, *no more or no less.* In this *rare* instance, because of the Debtor's *absence* of actual ownership interest in the Mercedes, the Mercedes is not property of the Debtor/Defendant's estate.[23]

### D. Debtor's Claim of Exemption is Not an Admission that the Mercedes is Property of the Estate

Finally, to the extent that Debtor's claim of exemption is an admission that this is property of the estate, the Court concludes that this is not an admission. If anything, the exemption under the stipulated facts before this Court is claimed in *error.* Admittedly, by implication, a claim of exemption in accordance with 11 U.S.C. § 522(b)(1) implies that

---

20. *Sommer,* 28 B.R. at 97.

21. *Id.*

22. *Richards,* 275 B.R. at 590.

23. *See, e.g., Sommer,* 28 B.R. at 97.

property exempted is property of the estate. A curious feature, however, of the Colorado exemption statute related to automobiles is that legal title to the automobile (i.e. ownership) is *not* a requirement. COLO.REV.STAT. § 13–54–102(1)(j)(I) allows a debtor in Colorado to exempt "one or more motor vehicles or bicycles *kept and used* by any debtor in the aggregate value of three thousand dollars."[24] The stipulated facts before this Court demonstrate that the Debtor/Defendant *has not ever kept or used* the Mercedes. It would seem that, even if this Court were to determine that the Mercedes was property of the estate, Debtor/Defendant *may* not be the proper party to exempt this item under COLO.REV.STAT. § 13–54–102(1)(j)(I).[25] On the other hand, Defendant Koching, upon writ of attachment, writ of execution, or his own filing of bankruptcy *may* be the proper party to exempt the Mercedes under COLO.REV.STAT. § 13–54–102(1)(j)(I). Thus, in effect, if this Court were to rule in favor of the Plaintiff, and the Plaintiff were to execute on the judgment, the Defendant Koching could conceivably turn around and claim this property exempt.

## IV. *Order*

Based upon the above and foregoing,

IT IS ORDERED that all claims as against both Debtor/Defendant and Defendant Koching in Plaintiff's Complaint are DENIED and the Plaintiff's Complaint is DISMISSED. The Clerk of the Court

---

**24.** Pursuant to COLO.REV.STAT. § 13–54–101(1), a " 'Debtor' " means "a person whose property or earnings are subject to attachment, execution, or garnishment." COLO.REV.STAT. § 2–4–402(11) defines "property" as meaning "both real and personal property." It would seem that the Colorado exemption statute would require some interest in the property—that is "keeping and using"—but legal title to, or ownership of, the automobile—is not necessarily a requirement in claiming an exemption under COLO.REV.STAT. § 13–54–102(1)(j)(I)

may close the within adversary proceeding ten (10) days after this Order becomes final and non-appealable.

as it is in COLO.REV.STAT. § 13–54–102(1)(c) (household goods) and n. 5 (articles of military equipment personally owned by members of the national guard).

**25.** But, alas, the Plaintiff has not objected to this exemption and it is too late for the Plaintiff to now object to this exemption. FED. R.BANKR.P. 4003(b); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).