392 B.R. 534 (2008)
In re Brenda L. DuFOE (aka Brenda L. DuFoe-Grana), Debtor.
Kenneth W. Gordon, as trustee, Plaintiff,
v.
Salvatore Arcidiacano and Tom Bronnel, Defendants.
Bankruptcy No. 08-20468. Adversary No. 08-2027.
United States Bankruptcy Court, W.D. New York.
August 27, 2008.
*535 Kenneth W. Gordon, Rochester, NY, pro se.
David H. Ealy, Trevett, Lenweaver & Salzer, P.C., Rochester, NY, for Defendants.
Tom Bronnel, pro se.

DECISION & ORDER
JOHN C. NINFO, II, U.S. Bankruptcy Judge.

BACKGROUND
On February 29, 2008, Brenda L. DuFoe (the "Debtor") filed a petition initiating a Chapter 7 case, and Kenneth W. Gordon, Esq. (the "Trustee") was appointed as her Chapter 7 Trustee.
The Schedules and Statements required to be filed by Section 521 and Rule 1007 indicated that: (1) she had unsecured nonpriority debts of in excess of $125,300.00, which included $8,000.00 for a Yellow Book advertisement and in excess of $91,600.00 in credit card debt on seventeen separate credit card accounts; (2) she was indebted for an unknown amount to Sal Arcidiacano ("Arcidiacano") in connection with a July 2007 lawsuit (the "Arcidiacano Lawsuit"); and (3) she was the owner of: a 2006 Dodge Viper (the "Viper"), valued at $58,520.00; a 2006 Ford Freestar van (the "Freestar"), valued at $11,010.00; a 2006 RX1 Snowmobile (the "Snowmobile"), valued at $5,345.00; a 2005 Raptor Four-Wheeler (the "Four-Wheeler"), valued at $3,040.00; and a lawn mower (the "Lawn Mower"), valued at $3,200.00 (collectively, the "Disputed Assets").
On April 1, 2008, the Trustee commenced an Adversary Proceeding (the "Turnover Proceeding") against Arcidiacano and Tom Bronnel ("Bronnel") (collectively, the "Defendants") after: (1) the Trustee learned at a Section 341 Meeting that the titles to the Viper and Freestar were solely in the name of the Debtor; (2) Arcidiacano had taken sole possession of the Disputed Assets; (3) the Debtor advised the Trustee that Arcidiacano had attempted to obtain duplicate titles for the Viper and the Freestar; and (4) Arcidiacano had failed to respond to a written demand by the Trustee that he turn over the Disputed Assets.
On April 1, 2008, the Trustee also filed a Motion for a Preliminary Injunction to enjoin the Defendants from transferring the Disputed Assets (the "Application for Preliminary Injunction"). On April 1, 2008, the Court entered an "Order to Show Cause" in connection with the Application for Preliminary Injunction, made returnable on April 2, 2008, and after the Defendants failed to appear at the hearing on the Application for Preliminary Injunction, the Court granted the preliminary injunction (the "Preliminary Injunction"), which enjoined the Defendants from selling, transferring, using, transporting or removing from the State of New York any of the Disputed Assets.
On April 14, 2008, Arcidiacano filed a Motion for a Rehearing on the Preliminary Injunction (the "Motion for a Rehearing"), which asserted that Arcidiacano: (1) was the beneficial owner of all of the Disputed *536 Assets under the terms of an express trust and/or because he had paid all of the down payment consideration for the purchase of the Assets, as well as all of the loan payments, insurance and maintenance costs for the Assets; (2) had maintained the exclusive use and possession of the Assets with the acquiescence of the Debtor; (3) did not appear at the hearing on the Application for Preliminary Injunction because he was never served with the Order to Show Cause and believed the only relief the Trustee was requesting was to prevent the transfer of the Viper and Freestar; (4) on or about April 9, 2008, provided the Trustee with documentary proof that he had paid the entire consideration for the Viper and Freestar; (5) was using the Freestar, which was insured, as his sole method of transportation; and (6) had previously disposed of the Snowmobile, Four-Wheeler and Lawn Mower.
Attached as an exhibit to the Motion for a Rehearing was an April 14, 2008 Affidavit by Arcidiacano, which alleged that: (1) the Debtor and Arcidiacano had cohabited from May 2003 to November 2006; (2) on February 8, 2006, Arcidiacano purchased the Freestar for $19,831.04 with a $14,500.00 down payment effected by a combination of cash and the trade-in of his 2002 Pontiac Grand Prix, but he titled the Freestar in the name of the Debtor because he could not qualify to obtain a favorable loan for the $5,331.04 balance due, and, thereafter, he paid all of the loan payments, insurance and maintenance costs on the Freestar until January 15, 2008, when he paid off the loan on the Freestar that had been obtained in the Debtor's name; (3) on or about August 28, 2006, Arcidiacano purchased the Viper for $72,074.03, with a $45,314.00 down payment effected by a combination of cash and the trade-in of a 2004 Corvette convertible (the "Corvette"), but he titled the Viper in the name of the Debtor so that she could, once again, obtain a loan for the $27,760.03 balance due, and, once again, he thereafter paid all of the loan payments, insurance and maintenance costs; (4) prior to the filing of the Debtor's petition, he had commenced the Arcidiacano Lawsuit in New York State Supreme Court to compel the Debtor to sign over to him the titles to the Viper and Freestar; (5) the untitled Four-Wheeler was: (a) paid for by Arcidiacano; (b) always registered in his name; and (c) sold in 2007 for approximately $4,500.00, with the proceeds being retained by him because the Debtor never made any claim of ownership to the Four-Wheeler; (6) the Snowmobile was purchased and paid for by Arcidiacano, although like the Freestar and the Viper, it was titled in the Debtor's name so she could obtain a loan for the balance due and the Snowmobile was sold in August 2006 for approximately $6,100.00, with the proceeds being deposited into his business account at a time when the parties were still cohabitating; and (7) the Lawn Mower was purchased by the Debtor on her Home Depot credit card in 2006, was given to him as a gift, and was sold by him in the Summer of 2007 for approximately $2,700.00, with the proceeds retained by him because the Debtor never made any claim of ownership to the Lawn Mower.
On April 16, 2008, the Trustee interposed a Response to the Motion for a Rehearing, which asserted that: (1) the Debtor had advised the Trustee that: (a) Arcidiacano had obtained duplicate titles to the Viper and the Freestar by forging the Debtor's signature on the required applications; and (b) Arcidiacano had sold the Freestar to Bronnel, who was a friend; (2) as alleged in an April 9, 2008 letter from Arcidiacano's counsel, Section 2108 of the New York Vehicle and Traffic Law ("NY VTL § 2108"), the Second Circuit Court of Appeals in the New Windsor Ambulance *537 Corps v. Meyers, 442 F.3d 101, 112 (2nd.Cir.2008) ("New Windsor") and the United States District Court for the Western District of New York (the "District Court") in In re Craig and Charlotte Smith, 99-cv06137 (March 28, 2000) ("Charlotte Smith") confirmed that a certificate of title issued by the New York State Department of Motor Vehicles is prima facie evidence of the ownership of the vehicle in question, but that such evidence of ownership is rebuttable; (3) although not discussed in either New Windsor, which was not a bankruptcy case, or Charlotte Smith, the Trustee believed that in a bankruptcy case, the rights of a trustee as the "perfect lien creditor" under Section 544[1] of the Bankruptcy Code superceded the rights of any third party to rebut the presumption of ownership under N.Y. VTL § 2108; and (4) the Arcidiacano Lawsuit was never prosecuted to judgment, and any rights to now obtain that judgment were inferior to the rights of the Trustee under Section 544.
On April 23, 2008, Arcidiacano filed a Memorandum of Law in support of the Motion for a Rehearing, which asserted that: (1) Section 541(d)[2] of the Bankruptcy Code excluded from property of the estate any equitable interest in property where the debtor held only bare legal title, so that the Viper and Freestar were not property of the Debtor's estate because Arcidiacano was the beneficial and equitable owner of those Disputed Assets; (2) as recently as July 7, 2006, the District Court in United States v. One 2001 Infiniti QX4 Automobile, 2006 WL 1888633 (W.D.N.Y. 2006) once again confirmed that the presumption of ownership in N.Y. VTL § 2108 was not conclusive, but could be rebutted by evidence which demonstrated that another individual owned the vehicle in question; and (3) in In re Garberding, 338 B.R. 463 (Bankr.D.Colo.2005) ("Garberding") the Bankruptcy Court for the District of Colorado in reconciling the apparent conflict between Section 541(d) and Sections 544(a)(1) and (a)(2), determined in that case where there was a Colorado statute very similar to N.Y. VTL § 2108, that the inquiry was whether the defendant, who was not a lienholder, would prevail under State Law as having a beneficial ownership or equitable lien in the vehicle in question.
*538 When the parties were unable to arrive at a settlement, the Court conducted an Evidentiary Hearing on July 24, 2008, at which the Debtor and Arcidiacano testified.

DISCUSSION

I. Testimony at Trial

The often conflicting testimony of the Debtor and Arcidiacano can be summarized as follows: (1) prior to his cohabitation with the Debtor, Arcidiacano had experienced substantial financial problems, had judgments and tax liens entered against him and had withdrawn a bankruptcy case; (2) during the parties' cohabitation, Arcidiacano operated a business, legally owned by the Debtor as a d/b/a, known as American Aqua Treatment Systems ("Aqua"); (3) the only bank account maintained for the Aqua business, owned by the Debtor, was a checking account in the name of the Debtor and Aqua (the "Aqua Account"); (4) throughout her cohabitation with Arcidiacano, the Debtor was receiving salary or buy-out checks from Valeo Corporation, and she claimed that at times she deposited some of that income into the Aqua Account, which Arcidiacano disputed, asserting that she never deposited money into the Account; (5) the Debtor's ownership of the Aqua business permitted it to obtain favorable financing or payment terms from vendors and other suppliers, and to establish major credit card company accounts, so that customers could pay by credit card, advantages that had real economic value and which Arcidiacano could not have obtained himself because of his credit history and the liens and judgments entered against him; (6) during the parties' cohabitation, the Debtor and Arcidiacano purchased and sold a number of vehicles that were titled in the Debtor's name in order to obtain favorable financing and insurance rates that Arcidiacano could not obtain, which financing and lower carrying costs provided real economic value, since it increased the net return from the resale or trade-in of those vehicles as they were traded in to obtain new vehicles to ultimately be resold for a profit; (7) many, if not all, of the loan payments which Arcidiacano asserts he made on the various vehicles titled to the Debtor, including the Freestar, the Corvette traded in to purchase the Viper, and the Viper itself, were made from the monies in the Aqua Account, the proceeds of a business solely owned by the Debtor that she was otherwise also providing economic value to, even though Arcidiacano may have done substantially all of the day-to-day work in operating the business, other than the paying of bills and completing necessary paperwork, which the parties acknowledged the Debtor sometimes performed; (8) during the parties' cohabitation, the Debtor incurred substantial credit card debt, which directly or indirectly benefitted Arcidiacano, who testified that approximately $15,000.00 of the debt was directly for his benefit, whereas the Debtor estimated that it was in excess of $100,000.00, and Arcidiacano admitted that he did use the proceeds of some convenience checks tied into one or more of the Debtor's credit card accounts; and (9) the Debtor acknowledged that Arcidiacano had selected the various vehicles that the parties had purchased in the Debtor's name, on which she had obtained the financing and insurance, that were ultimately resold or traded-in as down payments against the Viper and Freestar, and that for the most part she did not drive those vehicles, never driving the Viper, but that she considered the Viper and the Freestar to be "their vehicles."

II. Section 544

Following the decision of the District Court in Charlotte Smith, this Court *539 finds that the Trustee's rights under Section 544 do not supercede the rights of a party to rebut the presumption of ownership under N.Y. VTL § 2108.
This Court acknowledges that: (1) the District Court in its decision on appeal of a decision of this Court in Charlotte Smith did not specifically address the "perfect lien creditor" status of a trustee under Section 544 when it determined that the debtor in that case, who held title to a vehicle, had not met her burden under N.Y. VTL § 2108 to rebut the presumption of ownership, when she asserted and provided evidence that the vehicle had been purchased by her parents for her daughter; and (2) the Section 544 issue was not specifically argued in this Court.
Nevertheless, this Court does not assume that the District Court in Charlotte Smith was not aware of the Section 544 issue, or that it did not consider it in its decision on whether the N.Y. VTL § 2108 presumption had been rebutted by a debtor holding title in a bankruptcy case.[3]
Furthermore, there is a very persuasive analysis, as set forth in Garberding, that the rights of a trustee under Section 544 do not supercede the right of a party to demonstrate that they are the beneficial and equitable owner of a vehicle, as permitted by a State Law such as N.Y. VTL § 2108 or Colorado Law in that case.

III. New York Vehicle and Traffic Law Section 2108

It is clear from the decisions of the New York State and Federal Courts that have addressed the rebuttable presumption of N.Y. VTL § 2108, that a third-party not appearing on the title can nevertheless demonstrate that they are "the" beneficial or equitable owner of a vehicle on which another party appears on the title as the owner.
This Court is not aware of any decision of a New York State or Federal Court in connection with N.Y. VTL § 2108, which has held that the presumption can be rebutted by a party who does not demonstrate that it is "the" beneficial or equitable owner. All of the cases this Court has reviewed conclude that the party has or has not demonstrated that they are "the" sole beneficial or equitable owner of the vehicle in question, notwithstanding the state of the title.
From all of the pleadings and proceedings in the Turnover Proceeding, including the admittedly contradictory testimony of the Debtor and Arcidiacano at trial, this Court concludes that Arcidiacano has failed to meet his burden to demonstrate that he is "the" sole beneficial and/or equitable owner of the Viper and the Freestar for the following reasons:
1. while the Debtor and Arcidiacano were cohabitating, in addition to their romantic relationship, they were an "economic enterprise," far different from the fictional "economic partnership" ascribed to married couples in New York State in connection with matrimonial actions;
2. the "economic enterprise" was involved in running the Aqua business, in connection with which the Debtor, as owner, was supplying valuable economic services in the nature of a credit status that allowed the business to obtain favorable terms from vendors and suppliers and enter into agreements with major credit card companies, as well as to maintain the Aqua Account, economic advantages that Arcidiacano, because of *540 his credit history, judgments and liens, could not obtain;
3. the economic services that the Debtor was supplying in connection with the operation of the Aqua business increased the return from the operation of that business, which increased return was a component of the payments that were made from the Aqua Account by the economic enterprise to also engage in the business of buying, maintaining, reselling and trading up for ultimate resale various vehicles for a profit;
4. as with the Aqua business, the Debtor's credit was being used by Arcidiacano and the economic enterprise to obtain favorable financing and insurance rates that helped make the vehicle component of the enterprise ultimately profitable;
5. the economic advantages that the Debtor was bringing to the economic enterprise, by supplying her credit, assuming business liability for purchases by the Aqua business ($8,000.00 of her scheduled debts are for a Yellow Book advertisement), and incurring debt for the purchase of the enterprise's vehicles, in this Court's opinion gave her a very real economic interest in the fruits of the enterprise, including the Viper and the Freestar;
6. during the parties' cohabitation, the Debtor was incurring substantial unsecured credit card debt, which the economic enterprise and Arcidiacano were benefitting from in that it allowed monies from the Aqua business to be used in connection with the vehicle component of the enterprise, which monies might otherwise have had to have been diverted to the parties' living expenses;
7. when the Debtor testified that these vehicles were "theirs," this Court believes that she was correct, because the Viper and the Freestar were very much assets of the economic enterprise that she and Arcidiacano were both engaged in and contributing to.

IV. Section 541(d)

Although this Court has determined that Arcidiacano did not meet his burden to demonstrate that he is "the" sole beneficial and/or equitable owner of the Viper and the Freestar, as a principal in the economic enterprise that the Debtor and Arcidiacano were engaged in, he has some beneficial or equitable interest in the vehicles, because of the substantial economic contributions he made by running the day-to-day operations of the Aqua business and otherwise.[4]
This Court will provide the Trustee and Arcidiacano an opportunity to see if they can agree on a split of the value of the equity in these vehicles as of the date of the filing of the Debtor's petition, as well as what interest the estate may have in the proceeds of the sale of the other Disputed Assets. Arcidiacano could then pay the Trustee the value of the estate's interest in order to avoid the vehicles being sold and this Court determining the relative interests of the parties in the proceeds.

CONCLUSION
The Defendant, Arcidiacano, has failed to meet his burden to demonstrate that he is the sole beneficial owner of the Viper and the Freestar.
*541 The terms of the Preliminary Injunction shall remain in effect, except that Arcidiacano shall not be required to deliver the vehicles to the Trustee at this time.
This Turnover Proceeding is scheduled for a report by the parties at the Court's Evidentiary Hearing Calendar scheduled for September 17, 2008 at 9:00 a.m.
IT IS SO ORDERED.
NOTES
[1] Section 544(a)(1) and (a)(2) provide that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]
11 U.S.C. § 544 (2008).
[2] Section 541(d) provides that:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
11 U.S.C. § 541 (2008).
[3] If the District Court believed that the Trustee's Section 544 position was correct, it would not have made a detailed analysis of the evidence presented.
[4] Absent this Court's finding of an economic enterprise, it would follow the direction of the District Court in Charlotte Smith that N.Y. VTL § 2108 is otherwise an all or nothing proposition.